**David V. YARBOROUGH, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

No. 7050.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 12, 1956.

Decided Feb. 14, 1956.

Albert J. Ahern, Jr., and James J. Laughlin, Washington, D. C., for appellant.

James H. Langrall, Asst. U. S. Atty., and George Cochran Doub, U. S. Atty., Baltimore, Md., for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is an appeal in a criminal case in which appellant was convicted under all fourteen counts of an indictment, the first two of which charged wilful failure to file income tax returns for the years 1949 and 1950 and the remainder charged wilful failure to file returns of income taxes withheld from the wages of employees and social security taxes due with respect to their wages for the six quarterly periods embracing the year 1950 and the first half of the year 1951. Appellant was operating a restaurant in Washington City, and the evidence shows without contradiction that his receipts for each of the years in question were in excess of $72,000 and adjusted gross income was in excess of $12,000 for one of the years and in excess of $8,000 for the other. He had a number of employees from whose wages he made deductions on account of income and social security taxes, the deductions so made together with his share of the social security taxes due amounting to more than $600 per quarter for each of the quarters. He admits the receipt of income and the liability with respect to the income withholding and social security taxes and also the failure to file returns; and for this failure no excuse is offered except that he did not have the money to pay the taxes due on the returns. Four principal questions are raised by the appeal, viz.: (1) whether the District Court for the District of Maryland had jurisdiction of the cause; (2) whether wilful failure to file returns as to income withholding and social security taxes constituted a crime; (3) whether the law was correctly charged with respect to the element of wilfulness and reasonable doubt; and (4) whether there was error in refusing to charge the jury on the question of compromise.

On the first question, we think there can be no doubt as to the jurisdiction of the court. Whatever may be said as to the desirability of prosecuting in the District of Columbia violations of the income tax law by residents of the District, there can be no question but that, since the District of Columbia has been established by law as a part of the Revenue Collection District of Maryland, income tax returns must be filed with the Collector at Baltimore. The same is true as to returns required of social security and income withholding taxes. See Treasury Regulations 116, secs. 402.606 and 405.601. And it is well settled that failure to file such returns at Baltimore, where they are required to be filed, constitutes an offense within the District of Maryland. Bowles v. United States, 4 Cir., 73 F.2d 772, certiorari denied 294 U.S. 710, 55 S.Ct. 506, 79 L.Ed. 1245; Reass v. United States, 4 Cir., 99 F.2d 752, 754; Beaty v. United States, 4 Cir., 213 F.2d 712, 715; United States v. Warring, D.C., 121 F.Supp. 546, 549, affirmed 4 Cir., 222 F.2d 906, certiorari denied 350 U.S. 861, 76 S.Ct. 102. In the case of Bowles v. United States, supra, this court, speaking through the late Judge Northcott, after giving the history of the incorporation of the District of

Columbia in the Collection District of Maryland, said [73 F.2d 774]:

"The defendant being a resident of the District of Columbia, it became his duty to make his income tax return to the Collector at Baltimore, Md., and failure to make such return constituted an offense within the District of Maryland. In United States v. Lombardo, 241 U.S. 73, 36 S.Ct. 508, 60 L.Ed. 897, it was held that a resident of the state of Washington was guilty of an offense in the city of Washington, District of Columbia, for failing to file with the Commissioner General of Immigration, in the District of Columbia, a statement in writing required by an Act of Congress. In Rumely v. McCarthy, 250 U.S. 283, 39 S.Ct. 483, 486, 63 L.Ed. 983, the court said:

" 'It is contended, indeed, that there was no probable cause to believe that the offense charged in the Washington indictment was committed within the District of Columbia, and this upon the ground that appellant was not personally present in the District at the time of the alleged offense, and that he was under no duty to make report there to the Alien Property Custodian. The commissioner, however, found as a matter of fact that the Custodian's office was in the District of Columbia, and as the finding was supported by competent evidence the District Court properly held that it was not reviewable on writ of habeas corpus. That being so, the duty imposed by the statute to make report to the Alien Property Custodian involved the duty to make such report in the District of Columbia, and failure to make it was an offense against the United States committed in that District. United States v. Lombardo, 241 U.S. 73, 76, 36 S.Ct. 508, 60 L.Ed. 897; New York Central & H. R. R. Co. v. United States, 2 Cir., 166 F. 267, 269, 92 C.C.A. 331.' "

■ On the second question, the contention of appellant is that no crime is charged in counts 3 to 14 of the indictment, since, according to his contention, there is no statute making criminal the failure to file returns of social security taxes or income taxes withheld from the wages of employees. There is no merit in this contention. The Federal Insurance Contributions Act of August 14, 1935, 49 Stat. 636, Internal Revenue Code of 1939, 26 U.S.C. § 1400 et seq., levying "Social Security" taxes, in section 807(c) thereof, 26 U.S.C. § 1430, incorporates by reference "all provisions of law, including penalties, applicable with respect to any tax imposed by section 2700" of 26 U.S.C. One of the provisions of law applicable with respect to any tax imposed by section 2700 is 2707, entitled "Penalties". Subsection (a) thereof prescribes a civil penalty and subsection (c) makes wilful evasion a felony. Subsection (b), under which counts 4, 6, 8, 10, 12 and 14 of the indictment are drawn, is a misdemeanor section and is as follows:

"(b) Any person required under this subchapter to pay any tax, or required by law or regulations made under authority thereof to make a return, keep any records, or supply any information, for the purposes of the computation, assessment, or collection of any tax imposed by this subchapter who willfully fails to pay such tax, make such returns, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, be fined not more than $10,000, or imprisoned for not more than one year, or both, together with the costs of prosecution."

Counts 3, 5, 7, 9, 11 and 13 of the indictment are also drawn under 26 U.S.C. § 2707(b), which is made a part of the Federal Withholding Income Tax Act of June 9, 1943, 57 Stat. 126, 26 U.S.C. § 1621 et seq., which by section 2(a),

26 U.S.C. § 1627 incorporates by reference "all provisions of law, including penalties, applicable with respect to the tax imposed by section 1400". As we have seen, the penalty provisions of 26 U.S.C. § 2700 are applicable with respect to the tax imposed by section 1400.

Incorporation of provisions of the internal revenue laws by reference in other sections of those laws is common practice. The provisions applicable to section 2700 have been adopted by reference not only in the sections above indicated but also in sections 2408, 2479, 3294(c) and 3449. As said by the Court of Appeals of the Ninth Circuit in Young v. United States, 178 F.2d 78, 80, certiorari denied 339 U.S. 913, 70 S.Ct. 573, 94 L.Ed. 1339: "Incorporation of statutes by reference has been a common practice in federal legislation, and the adoption of an earlier statute by reference makes it as much a part of the later statute as though it had been incorporated at full length." Kendall v. United States, 12 Pet. 524, 625, 9 L.Ed. 1181; In re Heath, 144 U.S. 92, 94, 12 S.Ct. 615, 36 L.Ed. 358; Panama R. Co. v. Johnson, 264 U.S. 375, 391–392, 44 S.Ct. 391, 68 L.Ed. 748; Engel v. Davenport, 271 U.S. 33, 38, 46 S.Ct. 410, 70 L.Ed. 813. It is argued that the intent of Congress in the referral sections was to adopt the civil but not the criminal penalties provided with respect to section 2700; but it is a sufficient answer that Congress made no such distinction but adopted all provisions of law, "including penalties" applicable with respect to the tax imposed by that section. Section 2707 was the statute imposing "penalties" with respect to that tax. It was entitled "Penalties"; and included criminal penalties as well as civil. The rule that criminal statutes are to be strictly construed does not mean that they should be construed foolishly so as to defeat the manifest intention of Congress.

Appellant complains because the judge refused to charge that ignorance of the law would constitute a defense to the charges contained in the indictment. It is a sufficient answer to this that there was no substantial evidence upon which to base such a charge. Appellant had filed income tax returns as late as 1943. He was doing a restaurant business with annual receipts of more than $72,000 per year and adjusted gross income of more than $8,000 per year. He was employing a number of persons in his business and deducting approximately $600 per quarter from their wages on account of social security taxes and income withholding taxes. He was filling out forms furnished by the Revenue Department showing the deductions from the wages of these employees and was furnishing the employees copies thereof. While he testifies that he did not know it was an offense not to file returns, he specifically admitted that he knew it was his duty to file income tax returns (Record 544) and does not deny that he knew it was his duty to file the others; and the only excuse he gives in either case for not doing so is that he did not have the money to pay the taxes and thought that the taxes must be paid when the returns were filed. This was a matter to be considered on the question of wilfulness in failing to file the returns; but appellant was given the full benefit of his contention with regard thereto in the judge's charge, where the jury was told:

> "The defendant has testified that he thought it was necessary to pay the tax at the time he filed the return, and that he did not file the returns because he did not have the money to pay the tax. Of course, the tax was legally payable in full when the return was filed. But I instruct you that the fact that the defendant did not have sufficient cash to pay the tax, even if you find that to be a fact, is not a good legal reason for failure to file a return. You should, however, consider this testimony along with all the other testimony in the case in determining whether defendant's action in failing to file the returns was wilful."

This charge was given with respect to appellant's failure to file his personal income tax returns, but substantially the

same charge was given with respect to failure to file the other returns.

■■ Ignorance of the law is no defense to crime, except that, where wilfulness is an element of the crime, ignorance of a duty imposed by law may negative wilfulness in failure to perform the duty. See Hargrove v. United States, 5 Cir., 67 F.2d 820, 90 A.L.R. 1276; United States v. Murdock, 290 U.S. 389, 395–396, 54 S.Ct. 223, 78 L.Ed. 381. Here there was no substantial basis in the evidence for appellant's contention that he did not know that it was his duty to file returns. The defense of lack of funds was certainly given all the weight to which it was entitled in the portion of the charge quoted, particularly in view of the fact that this had been preceded by an elaborate charge on the element of wilfulness, wherein the court said:

"To convict the defendant on that charge, the Government must convince you beyond a reasonable doubt of three things: First, that the defendant was required to file a return for 1949. That is, that his adjusted gross income was over $600. Defendant admits this—he admitted it in the opening statement and admitted it on the stand—and admits that he knew he was required to file a return. Second, that defendant did not file the return. Defendant admits this too. Third that defendant's failure to file the return was wilful. Now, defendant disputes this, so let us see what the word 'wilful' means.

"The word 'wilful' has a number of different meanings, depending upon the context in which it is used. As it is used in this subsection with which we are dealing here today, wilful means voluntary, purposeful, deliberate and intentional, as distinguished from accidental, inadvertent or negligent. The Government must prove beyond a reasonable doubt that defendant's failure to file the return was voluntary, purposeful, deliberate and intentional, and not accidental, inadvertent or negligent.

"The jury is instructed that this is a criminal proceeding and that the word 'wilful' when used in a criminal statute means an act done with a bad purpose, or one done without justifiable excuse, or one done stubbornly, or obstinately, perversely, with a bad motive.

"I instruct you that the only bad purpose or bad motive, which it is necessary for the Government to prove in this case is the deliberate intention not to file returns which the defendant knew ought to have been filed, so that the Government would not know the extent of the liability."

■ On the question of reasonable doubt, appellant requested the court to give the charge, usually given in circumstantial evidence cases, to the effect that if upon the whole evidence there is any reasonable hypothesis consistent with the innocence of defendant, it would be the duty of the jury to acquit. The judge did not give the charge as requested, but in his general charge gave full instructions as to the presumption of innocence and reasonable doubt. This was sufficient. It is ordinarily better practice for the trial judge not to give instructions in the partisan and extreme form in which they are not infrequently prepared by counsel but to cover the points raised by them in the judicial language of the general charge. That was done here and the appellant was given full benefit of the rule as to presumption of innocence and the requirement that guilt be established beyond a reasonable doubt. In this connection the court charged:

"Another rule applicable to criminal cases is that the defendants are entitled to the presumption of innocence. This presumption attends him throughout the trial, and the burden of overcoming this presumption rests upon the government, which must establish the defendant's guilt by evidence beyond a reasonable doubt.

"A reasonable doubt means a doubt founded upon reason. It does not mean a fanciful doubt, or a whimsical or capricious doubt, for anything relating to human affairs and depending upon human testimony is open to some possible or imaginery doubt. When all the evidence in the case, carefully analyzed, compared and weighed by you, produces in your minds a settled conviction or belief of a defendant's guilt, such a conviction as you would be willing to act upon in matters of the highest importance relating to your own affairs, when it leaves your minds in such a condition that you feel an abiding conviction amounting to a moral certainty of the truth of the charge, then, and in that event, you would be free from a reasonable doubt. Absolute or mathematical certainty is not required, but there must be such certainty as satisfies your reason and judgment, and upon which you feel conscientiously bound to act."

■ The court correctly refused to charge the jury that appellant should be acquitted if he had made tax payments on promises or representations by revenue agents that this would bar criminal prosecution in his case. There is no evidence whatever of compliance with the compromise statute, in which Congress has laid down the conditions which must be met to compromise a case arising under the internal revenue laws, including authorization by the Commissioner of Internal Revenue with approval of the Secretary of the Treasury or the Undersecretary or an Assistant Secretary. 26 U.S.C. § 3761. As said by the Supreme Court in Botany Worsted Mills v. United States, 278 U.S. 282, 288, 49 S.Ct. 129, 131, 73 L.Ed. 379:

"Here the attempted settlement was made by subordinate officials in the Bureau of Internal Revenue. And although it may have been ratified by the Commissioner in making the additional assessment based thereon, it does not appear that it was assented to by the Secretary, or that the opinion of the Solicitor was filed in the Commissioner's office.

"We think that Congress intended by the statute to prescribe the exclusive method by which tax cases could be compromised, requiring therefor the concurrence of the Commissioner and the Secretary, and prescribing the formality with which, as a matter of public concern, it should be attested in the files of the Commissioner's office; and did not intend to intrust the final settlement of such matters to the informal action of subordinate officials in the Bureau. When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode. Raleigh, etc., R. Co. v. Reid, 13 Wall. 269, 270, 20 L.Ed. 570; Scott v. Ford, 52 Or. 288, 296, 97 P. 99."

Directly in point here is what was said by Judge Augustus N. Hand speaking for the Court of Appeals of the Second Circuit in United States v. Lustig, 163 F.2d 85, 89, certiorari denied 332 U.S. 775, 68 S.Ct. 88, 92 L.Ed. 360, a case involving prosecution for an income tax violation, in which defendants contended that prosecution was barred under this statute because of disclosures made to a revenue agent. Judge Hand said:

"The compromise statute affords no shield to one who has violated the tax laws unless there has actually been a compromise. See Botany Worsted Mills v. United States, 278 U.S. 282, 49 S.Ct. 129, 73 L.Ed. 379. It is not even claimed here that there was more than an offer to make a compromise. None of the formalities prescribed by the statute and treated by the Supreme Court as necessary to effect a compromise were observed. Botany Worsted Mills v. United States, supra, 278 U.S. at pages 288–289, 49 S.Ct. 129, 73 L.Ed. 379. There was no issue of fact for court or jury as to whether a contract of compromise

had been made. Accordingly there is no merit in the defense of immunity."

See also Cabin Creek Consol. Coal Co. v. United States, 4 Cir., 137 F.2d 948; Brast v. Winding Gulf Colliery Co., 4 Cir., 94 F.2d 179; and United States v. Goldberg, D.C., 123 F.Supp. 385, 387, modified on another point, 8 Cir., 225 F. 2d 180. Cf. Rau v. United States, 2 Cir., 260 F. 131 and Willingham v. United States, 5 Cir., 208 F. 137, decided before the decision by the Supreme Court of Botany Worsted Mills v. United States, supra.

■ Appellant does not contend that there was compliance with this statute. His argument is that he was entitled to rely on statements made to him by the revenue agents with whom he was dealing. The answer is that the question on this phase of the case is not one of intent. The crime of wilfully failing to file returns had already been committed and appellant was liable for prosecution therefor unless prosecution was barred by the compromise statute. Prosecution was not barred because the conditions prescribed by the statute had not been complied with.

■ Appellant contends that he turned over his books and records to the revenue agents on promises and representations from them that he would not be prosecuted. They emphatically deny that any such promises were made to him and say that, before making any statement or furnishing any information, he was advised by them of his constitutional rights not to be required to give evidence against himself. It is clear that such promises if made would not exculpate him of the crime of which he was guilty. Whether they would render inadmissible against him the records which he furnished, we need not stop to inquire, for the judge decided this question in his favor, charging the jury with regard thereto as follows:

"If you find that any of the evidence was obtained by the Agents or either of them from the defendant by reason of any promise which the Agent made to the defendant that he would not be prosecuted if he turned over such evidence to the Agents, you should not consider that evidence. Defendant contends that he turned his books and some of his other records over to the Agents after Agent Knight made such a promise. Agent Knight and Deputy Collector Lewis both deny that any such promise was made."

■ Other contentions of appellant are so lacking in merit as to warrant only the briefest mention. He contends that the trial judge erred in not making inquiry of the jurors on the voir dire as to their religious affiliations. No matter of any religious significance whatever was involved in the case; and appellant does not show how he could have been prejudiced in any way by the refusal of the judge to make inquiry of the jurors as to a private matter of this sort. There is nothing to show that he belonged to any religious sect or was charged with a crime as to which any sect held views different from the rest of mankind, and the jurors were interrogated fully as to all matters which might show interest or bias on their part or could affect their fitness to serve as jurors in the cause. It is well settled that what questions shall be asked of jurors on the voir dire is a matter resting in the sound discretion of the trial judge; and there is nothing here to show that the discretion was in any way abused.

■ Complaint is made of refusal to withdraw a juror and order a mistrial, because the prosecuting attorney in his opening statement to the jury referred to the fact that appellant had not remitted the amounts withheld from the wages of employees, but it was clearly proper to prove this as one of the circumstances attending the commission of the crime charged and as bearing on the intent of appellant in failing to file returns. Complaint is also made because

appellant was allowed to be questioned about claiming a marital deduction in his return for 1952 when he was not married to the woman with whom he was living; but this was competent by way of impeachment as well as for the bearing that it had on the question of intent in failing to file returns in prior years.

The case was fairly tried and we find no reversible error in any of the matters complained of.

Affirmed.