UNITED STATES of America

v.

Columbus JANNUZZIO and Dominick Merlonghi.

Crim. A. No. 1127.

United States District Court
D. Delaware.
June 10, 1960.

See also 22 F.R.D. 223.

462

Leonard G. Hagner, U. S. Atty., Robert W. Wakefield, Asst. U. S. Atty., Wilmington, Del., and Daniel H. Cochran, Sp. Asst. U. S. Atty., Philadelphia, Pa., for the United States.

E. N. Carpenter, II, of Richards, Layton & Finger, Wilmington, Del., for defendants.

WRIGHT, Chief Judge.

This matter is before the court on defendants' motion for a judgment of acquittal, or in the alternative, for a new trial.[1] Defendants, Columbus Jannuzzio and Dominick Merlonghi, were tried and convicted by a jury on four counts of willfully attempting to defeat and evade federal income taxes and Federal Insurance Contribution Act (F.I.C.A.) taxes withheld from the wages of employees of Printz Motor Sales Company in violation of 26 U.S.C. § 2707(c) of the 1939 Internal Revenue Code as made applicable by 26 U.S.C. §§ 1627 and 1430.[2]

The prosecution period embraces the second and third quarters of 1952. The amounts involved are:[3]

| | | | | |
|---|---|---|---|---|
| Count | I | (Income tax withheld) | 2nd quarter | $525.40 |
| Count | II | (F. I. C. A.) | " " | 95.60 |
| Count | III | (Income tax withheld) | 3rd quarter | 107.05 |
| Count | IV | (F. I. C. A.) | " " | 27.13 |

In April, 1952 defendants in conjunction with a third associate, Albert Marta, formed a corporation, Printz Motor Sales Company (Printz), for the purpose of

1. Fed.Rule of Crim.Proc. 29(b), 18 U.S.C.

2. " * * * The Federal Insurance Contributions Act of August 14, 1935, 49 Stat. 636, Internal Revenue Code of 1939, 26 U.S.C. § 1400 et seq., levying 'Social Security' taxes, in section 807(c) thereof, 26 U.S.C. § 1430, incorporates by reference 'all provisions of law, including penalties, applicable with respect to any tax imposed by section 2700' of 26 U.S.C. One of the provisions of law applicable with respect to any tax imposed by section 2700 is 2707, entitled 'Penalties'. Subsection (a) thereof prescribes a civil penalty and subsection (c) makes wilful evasion a felony. Subsection (b), under which counts 4, 6, 8, 10, 12 and 14 of the indictment are drawn, is a misdemeanor section * * *." Yarborough v. United States, 4 Cir., 1956, 230 F.2d 56, 59.

3. Indictment.

conducting a used car business. The principals were neither lettered nor were they particularly knowledgeable in business management. Hence, a manager with experience in the field was employed to direct the firm's operations. A bookkeeper and an independent accountant were engaged to assist in administration.

In mid-July, 1952 the manager, bookkeeper and Marta terminated their association with Printz, and in May, 1953 Printz concluded its unsuccessful operations. The accountant similarly severed his connection with the firm in July of 1952. He, however, performed services for Printz commencing in the late fall of 1952 until dissolution in the early part of 1953.

No returns accounting to the government for income taxes and F.I.C.A. taxes withheld from employees' wages for the second and third quarters of 1952 were ever filed nor were any sums transmitted to the government.

The particular portion of 26 U.S.C. § 2707(c) pursuant to which defendants were prosecuted provides:

> " * * * any person who willfully attempts in any manner to evade or defeat any tax imposed by this subchapter or the payment thereof, shall, in addition to other penalties provided by law, be guilty of a felony * * * (penalties omitted)."

This provision with respect to withheld monies is to be construed in the same manner as the felony sanction of the income tax section of the 1939 I.R.C. 26 U.S.C. § 145(b).[4]

The principal questions raised by defendants' motion are:

1. Did defendants' conduct constitute an attempted evasion?

2. Were defendants' actions willful as that term applies to the felony standard?

The cumulative acts of the willful failure to file a tax return required by law and the willful failure to pay the tax due are incapable without more to substantiate a willful attempt to evade or defeat the tax.[5] Such action, absent affirmative conduct intentionally designed to evade or defeat the tax or the payment thereof establishes only lesser violations of the revenue laws.[6]

Cognizant of the legal requirements to support a 2707(c) violation, the government relied upon two positive acts of alleged tax evasion to sustain its burden. First, that defendants willfully and knowingly diverted corporate funds to themselves and to other creditors of the corporation in preference to the payment of the obligation of Printz to the government for income and F.I.C.A. taxes withheld from employees.[7] Second, that defendants willfully and knowingly evaded the issuance of withholding tax statements (Form W–2) to the employees of the corporation after said employees had made specific requests for their issuance.[8]

In support of the first element, "the diversion of corporate funds", the government directs attention to Wilson v. United States, where the 9th Circuit in a 2707(c) prosecution announced:[9] " * * * the diversion of available funds to affiliates and other creditors in preference to payment of Government obligations qualifies as an affirmative act under the statute and would warrant conviction if done with the requisite state of mind." The defendant in Wilson had duly filed the

---

4. Wilson v. United States, 9 Cir., 1957, 250 F.2d 312, 320–321.

5. Spies v. United States, 1942, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418.

6. " * * * The teaching of the Spies case is that in order to sustain a conviction under the felony statute something more than a violation of the misdemeanor statute must be shown, some conduct, 'the likely effect of which would

be to mislead or conceal.' " Clay v. United States, 5 Cir., 1955, 218 F.2d 483, 486; Spies v. United States, 1942, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418; United States v. McCue, D.C.Conn.1958, 160 F. Supp. 595.

7. Court's instructions, N.T. 570–571.

8. Note 7, supra.

9. Wilson v. United States, 9 Cir., 1957, 250 F.2d 312, 320.

464

withholding tax returns required by law, Form 941, but had a long record of not remitting the sums withheld to the proper depository. In the present prosecution, defendants neither filed Form 941 nor remitted any tax for the first two periods Printz was in business—the 2nd and 3rd quarters of 1952.

The applicable portion of § 2707(c) set forth above enunciates two separate crimes: (1) the willful attempt in any manner to evade or defeat any tax imposed by law; and (2) the willful attempt in any manner to defeat or evade the payment of any tax imposed by law. This scheme complements the misdemeanor provision, 26 U.S.C. § 2707(b) proscribing the willful failure to file a tax return required by law, and the willful failure to pay the tax.[10]

In Wilson, since returns were filed, defendant was charged solely with willfully attempting to defeat and evade the payment of the tax.[11] Present defendants having neither filed a return nor paid the tax were indicted for willfully attempting to defeat or evade the tax.

■■ A willful attempt to defeat or evade the tax requires the coexistence of a particular subjective state of mind— "willful"—and certain affirmative activity carried on pursuant to such mental state—"attempt to evade or defeat the tax."[12] The word "attempt" as used in the statute involves two elements:[13]

1. An intent to evade or defeat the tax; and

2. Some act done in furtherance of such intent.

Since "willful" requires a particular subjective state of mind as does one of the elements of an "attempt", it can readily be seen why the 9th Circuit has referred to this apparent redundancy as "willful willfulness".[14]

■ To reduce the statute to workable proportions, in order to constitute a willful attempt to defeat or evade the tax, there must be a deliberate act capable of deceiving, misleading or defeating a tax obligation known to exist and the accused must have intentionally employed such device for tax evasion reasons. It is unnecessary for the act to have achieved the desired object.[15] Proof of the specific intention that the accused engaged in conduct to evade or defeat the tax must be independently established.[16] For example, in an income tax prosecution the understatement of income, although sufficient to constitute the "attempt", is incapable standing alone, of satisfying "willfulness".[17]

10. "§ 2707. Penalties * * *
    "(b) Any person required under this subchapter to pay any tax, or required by law or regulations made under authority thereof to make a return, * * who willfully fails to pay such tax, make such returns, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor * * *."

11. "* * * Since appellant both collected and accounted for the withheld monies, conviction under this section can be predicated only on the willful attempt to evade or defeat the payment of the taxes." Wilson v. United States, 9 Cir., 1957, 250 F.2d 312, 318.

12. Wilson v. United States, 9 Cir., 1957, 250 F.2d 312, 318.

13. Forster v. United States, 9 Cir., 1956, 237 F.2d 617.

14. Tittman v. Great Northern Ry. Co., 9 Cir., 1958, 252 F.2d 793, 802.

15. "* * * The attempt made criminal by this statute does not consist of conduct that would culminate in a more serious crime but for some impossibility of completion or interruption or frustration. This is an independent crime, complete in its most serious form when the attempt is complete and nothing is added to its criminality by success or consummation, as would be the case, say, of attempted murder. * * *" Spies v. United States, 317 U.S. 492, 498–499, 63 S.Ct. 364, 368, 87 L.Ed. 418.

16. United States v. Alker, 3 Cir., 1958, 260 F.2d 135, 148.

17. "A final element necessary for conviction is willfulness. The petitioners contend that willfulness 'involves a specific intent which must be proven by independent evidence and which cannot be inferred from the mere understatement of

■■ Thus, the issue initially presented in the instant action is whether the diversion of corporate funds is an act capable of evading or defeating the tax. The Wilson court held that such conduct meets the test for evasion of the payment of the tax.[18] An exhaustive research of the decisional law has revealed no discussion reflecting whether a difference exists in the requirements necessary to sustain willful evasion of the tax as opposed to willful evasion of the payment of the tax. Mr. Justice Jackson in Spies indicates that there are perhaps different standards between the willfulness required in the failure to make a return, and the willfulness in the nonpayment of the tax: [19]

"The difference between willful failure to pay a tax when due, which is made a misdemeanor, and willful attempt to defeat and evade one, which is made a felony, is not easy to detect or define. Both must be willful, and willful, as we have said, is a word of many meanings, its construction often being influenced by its context. United States v. Murdock, 290 U.S. 389 [54 S.Ct. 223, 78 L.Ed. 381]. *It may well mean something more as applied to nonpayment of a tax than when applied to failure to make a return.* * * * " (Emphasis supplied.)

The language of Spies supports the conclusion that Congress intended to set forth two separate crimes by providing both for the punishment of "willful evasion of the payment", and "willful evasion of the tax". The dichotomy initiated in the misdemeanor provision suggests strongly that in proscribing both the "willful failure to file" and the "willful failure to pay" Congress desired to carry the symmetry over into the felony standard. Thus when the term "tax" is employed in the felony provision it means something other than payment; otherwise, the statute in part would be superfluous.

Where Congress has declared the willful attempt to defeat or evade the tax is to be punished, as well as the willful attempt to defeat or evade the payment thereof, it would seem that the plausible meaning to ascribe to the word "tax" is the assessment or ascertainment of the amount due or owing the United States under the appropriate revenue law. The intentional interference with the correct assessment by concealment or other means is thus a criminal violation. Under this view, behavior indicative of an attempt to evade the payment does not necessarily meet the standard of an attempt to evade the tax. Similarly, proof of willfulness in each instance might take a different tact.[20]

The act of diversion in Wilson where returns had been filed would be perhaps probative of an attempt to defeat or evade the payment.[21] It could almost be likened to a fraudulent transfer.

In the instant case, the act of diversion has simply no probative value if it is to

---

income.' This is a fair statement of the rule." Holland v. United States, 1954, 348 U.S. 121, 139, 75 S.Ct. 127, 137, 99 L.Ed. 150.

18. See note 9, supra, and accompanying text.

19. 1942, 317 U.S. 492, 497, 63 S.Ct. 364, 367, 87 L.Ed. 418.

20. "The definition of the word 'wilfully' as used in the misdemeanor statute was correctly defined in the instructions given by the court. That a difference exists in the meaning of 'wilfully' when used in the statute defining a felony and that defining a misdemeanor is recognized. It is 'a word of many meanings, its con-

struction often being influenced by its context. United States v. Murdock, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381. It may well mean something more as applied to nonpayment of a tax than when applied to failure to make a return. Mere voluntary and purposeful, as distinguished from accidental, omission to make a timely return might meet the test of willfulness.' * * *." Abdul v. United States, 9 Cir., 1958, 254 F.2d 292, 294.

21. Note 9, supra; but see the views of the Third Circuit in United States v. Palermo, 3 Cir., 1958, 259 F.2d 872 in a failure to pay case where timely returns were filed and money had been diverted.

be considered as conduct evidencing an attempt to conceal or defeat the ascertainment or assessment of the tax. The proof adduced at trial considered in the light most favorable to the government demonstrates at all times there was no attempt to obscure or hide the amounts owing the government. Records, at the behest of defendant, Merlonghi, were preserved by the corporation's accountant and when the investigation commenced these records were turned over to the special agent. Even if it be assumed that evasion of the tax encompasses evasion of the payment under the circumstances as here prevail, the diversion of corporate funds still cannot supply the necessary conduct to constitute an attempt. More is required. In Wilson, Revenue Agents throughout the prosecution period constantly attempted to collect the tax.[22] In fact, it was only after bankruptcy intervened that prosecution was initiated.[23]

In the present proceeding there was no attempt to collect the tax.[24] There is little difference between the factual setting of the immediate case and that presented in Yarborough v. United States.[25] In Yarborough, defendant was convicted of violating § 2707(b) the misdemeanor provision.[26] There as in the present case, no returns were filed nor were the withholding taxes remitted. The accused in Yarborough asserted that he did not have the funds to pay the taxes which necessarily means that he diverted the monies to himself and/or other creditors in preference to the government.[27]

Unfortunately, the government in the instant case permitted the statute of limitations applicable to Section 2707(b) to expire, notwithstanding that defendants' conduct was known to the authorities well within the three-year period.[28]

Employing the term "diversion" cannot disguise what is actually involved in the charge, namely, the taxpayer did not have sufficient money to pay his tax obligation at the time prescribed by law. To countenance the diversion of funds as conduct constituting an "attempt to evade the tax" would be in derogation of the Spies principle.[29] As Mr. Justice Jackson observed:[30]

" * * * We think that in employing the terminology of attempt to embrace the gravest of offenses against the revenues, Congress intended some willful commission in addition to the willful omissions that make up the list of misdemeanors. Willful but passive neglect of the statutory duty may constitute the lesser offense, but to combine with it a willful and positive attempt to evade tax in any manner or to defeat it by any means lifts the offense to the degree of felony.

\* \* \* \* \* \*

" * * * Mere voluntary and purposeful, as distinguished from

---

22. 9 Cir., 1957, 250 F.2d 312, 315.

23. Note 22, supra; " * * * Unfortunately, appellant's expectation proved groundless and his hopes were dashed. Coast Redwood Co. collapsed and was ultimately adjudicated a bankrupt. Had events taken a different turn, this case might not be before us." Wilson v. United States, 9 Cir., 1957, 250 F.2d 312, 318.

24. " * * * To warrant imposition of the heaviest of penalties assessable for non-payment of taxes, *the principal purpose of all such penalties being compliance*, it must also be found that the defendant's conduct was prompted in part at least by tax evasion motives. * * *" Wilson v. United States, 9 Cir., 1957, 250 F.2d 312, 321. (Emphasis supplied.)

25. 4 Cir., 1956, 230 F.2d 56.

26. 26 U.S.C. § 2707(b).

27. " * * * He [defendant] admits the receipt of income and the liability with respect to the income withholding and social security taxes and also the failure to file returns; and for this failure no excuse is offered except that he did not have the money to pay the taxes due on the returns. * * *" Yarborough v. United States, 4 Cir., 1956, 230 F.2d 56, 58.

28. N.T. 27–35.

29. 1942, 317 U.S. 492, 63 S.Ct. 364, 87 L. Ed. 418.

30. 1942, 317 U.S. 492, 497–499, 63 S.Ct. 364, 368.

accidental, omission to make a timely return might meet the test of willfulness. But in view of our traditional aversion to imprisonment for debt, we would not without the clearest manifestation of Congressional intent assume that mere knowing and intentional default in payment of a tax, where there had been no willful failure to disclose the liability is intended to constitute a criminal offense of any degree. We would expect willfulness in such a case to include some element of evil motive and want of justification in view of all the financial circumstances of the taxpayer."

The government's proffer with respect to defendants' handling of employees' W–2 forms stands on no better footing. The so-called evasive answers of defendants when inquiry was made regarding the issuance of W–2 forms occurred many months after the alleged violations occurred.[31] Hence, this behavior if at all relevant is limited for its probative effect to the "willfulness" factor.[32] Further, the government's expectation of what the evidence would reflect simply did not materialize. The only evidence supporting the government's position is that one employee when he spoke to defendant, Merlonghi, at some place in Wilmington, Delaware, purportedly at Fourth and Market Streets, Merlonghi stated that he would send him a W–2 form and that Merlonghi never fulfilled his commitment. The uncontradicted testimony of other witnesses disclosed that when similar requests were made of defendants, either a form W–2 or the necessary information required to be set forth thereon was furnished.[33]

In the United States v. Long, Judge Hastie relying upon Spies held that it was reversible error to permit proof of nonfiling of an income tax return in one year to evidence willfulness in a prosecution for evasion of the tax in another period:[34]

31. "As we said in United States v. Martell, supra, 'willfulness' 'requires a specific wrongful intent' and the existence of that intent must be established as of the time the crime as charged, was committed—in the instant case the failure to pay the tax on the due date. * * *" United States v. Palermo, 3 Cir., 1958, 259 F.2d 872, 881.

32. "The law is well settled that prior and subsequent acts whether they portray criminality or not when substantially similar to the subject matter forming the basis of the indictment are probative to negate the inference that the crucial conduct was unintentional, innocent, inadvertent or the product of mistake. * * *" United States v. Alker, 3 Cir., 1958, 260 F.2d 135, 157.

33. On direct examination of defendants' accountant, Joseph Ciconte, the Assistant United States Attorney elicited:
"Q. Now, after you told them of this requirement for furnishing W–2 statements, did they ever give you any instructions to prepare W–2's? A. Well, no, only at one time one employee called up and said, 'Where is my W–2?' I says, 'Well, I can't prepare them because—'
"Q. Do you remember who this employee was? A. I think it was Phillip Julian, and he wanted to file his income

tax. And I said I couldn't prepare it because I didn't have nothing else to do with it. So I called one of the officers up and I said, 'This gentleman wants his W–2.'
"Q. Do you remember which officer? A. Mr. Jannuzzio.
"Q. And what did he say? A. He said, 'All right, go ahead and give it to him and we will take care of it later.'
"Q. Did you give it to him? A. Yes, I made one up for him, and I explained to him that they should pay these taxes first because it is going to be throwed back at you." N.T. 146–147.
Defendants' employee, Irving Freck testified:
"Q. Did you ever receive a W–2 after those requests? A. Not to my knowledge.
"Q. Did they tell you the amount of your earnings? A. Dominick gave me the figures. Where he got them I don't know." N.T. 343.
With respect to defendants' employees George Beaver and John Fernandez, it was disclosed that neither Beaver nor Fernandez received W–2 statements. The government, however, did not inquire whether these employees requested defendants to supply form W–2 or the necessary information. N.T. 336–341.

34. 3 Cir., 1958, 257 F.2d 340, 341–342.

" \* \* \* In the light of this distinction it is difficult to see how evidence concerning passive failure to perform a required act in 1948 can indicate willfulness in affirmative misdoing during the following year. That the accused was willing to ignore his filing obligation in 1948 has no significant tendency to show intentional misrepresentation in a return actually filed for 1949. Yet, the very use of evidence about failure to file a 1948 return as some indication of guilt in affirmative evasion a year later tends to make the jury think, incorrectly under the Spies doctrine, that the basis of criminality is essentially the same in both situations.

"So far we have considered the propriety of a 1949 inference from the appellant's 1948 behavior on the assumption that there was some proper basis for viewing the 1948 omission itself as willful. But there was none. There was no evidence whatever of circumstances or statements or conduct connected with appellant's failure to file a 1948 return which indicated in any way the reason for this omission or the state of mind which attended it. A mere showing that an accused earned $7000. in 1948 yet failed to file a return would not in itself be sufficient evidence to go to a jury in support of a claim that this omission was 'willful', and therefore a misdemeanor under Section 145(a). \* \* \* Thus, for this appellant to have been convicted even of a 1948 misdemeanor, additional evidence, beyond proof of his failure to file a return on substantial 1948 earnings, would have been required indicating in some way 'that the omission was advertent and motivated by the bad purpose of preventing the government from receiving returns at the time required by law.' \* \* \* "

■ The reasoning of Judge Hastie set forth above indicates that the principle enunciated would likewise preclude proof of failure to issue W–2 forms as probative of willfulness in an evasion case. Stronger reasons prevail in the instant case for the alleged act of willfulness occurred much later than the purported evasion. The single act of failing to comply with an asserted intention is insufficient evidence to convert nonaction into affirmative conduct. Especially is this true when the record is not clear where the alleged occurrence transpired. The statement of Merlonghi that he would send employee Culver his W–2 statement happened if at all on premises other than the situs of Printz' activity.

■ The definition of willfulness as it is employed in the penalty provisions of the revenue laws has plagued trial courts. It is apparently well established that the term has different meanings depending upon the context in which it is used. In a misdemeanor violation it has one meaning and in a felony another.[35] As previously observed, both the felony and misdemeanor provisions heretofore discussed enunciate two separate crimes:[36] the misdemeanor—willful fail-

---

35. Note 20, supra.

36. Judge Goodrich in United States v. Croessant, 3 Cir., 1949, 178 F.2d 96, 97, explains the reason why a partial discharge of a taxpayer's obligation to the treasury exposes the perpetrator to a greater criminal penalty than if no disclosure had been made:

"We do not think this argument is correct. A man who files no return has made no misrepresentation. He has simply failed to do what the statute requires him to do. But the man who files a wilfully false return has endeavored to mislead his government. He creates the appearance of having complied with the law, whereas his neighbor who has filed no return does no such thing. Not only has he created the appearance of complying, but that apparent compliance stands a good chance of remaining unattacked, for the tax authorities cannot possibly audit every taxpayer's return every year. There is substance, we think, in distinguishing between failing to file a return and knowingly filing a false one. There is also good common law analogy for such a distinction both in the tort rules regarding liability for deceit and in criminal law rules regard-

ure to file and willful failure to pay;[37] the felony—the willful attempt to evade or defeat the tax, and the willful attempt to evade or defeat the payment of the tax.[38]

Reference to the decisional law demonstrates that the definition of willfulness is influenced jointly by the nature of the prosecution and context within which it is presented.[39] The standard in a willful failure to file prosecution is succinctly set forth in Yarborough v. United States:[40]

"'I instruct you that the only bad purpose or bad motive, which it is necessary for the Government to prove in this case is the deliberate intention not to file returns which the defendant knew ought to have been filed, so that the Government would not know the extent of the liability.'"

And in United States v. Cirillo:[41]

"* * * Where the offense charged is the misdemeanor of willfully failing to file a tax return, the phrase 'bad purpose' used as a characterization of 'willfulness' serves merely to distinguish situations involving bona fide misconceptions of what is required from those where the failure to file has been attended by knowledge of the legal obligation and purpose to prevent the government from getting that which it lawfully requires."

United States v. Palermo announces the criterion to establish "willfulness" in a failure to pay case where timely returns have been filed:[42]

"The proper standard of 'willfulness' to be applied with reference to the situation here presented, may be stated as follows:

"Willfulness is an essential element of the crime proscribed by §

145(a). It requires existence of a specific wrongful intent—an evil motive—at the time the crime charged was committed; viz., failure to pay the tax due at the time required by law. A series of defaults, indicating a pattern of behavior, knowingly and intentionally made, may suggest the existence of the specific 'evil motive'. Mere laxity, careless disregard of the duty imposed by law, or even gross negligence, unattended by 'evil motive' are not probative of 'willfulness'."

"Willful" in the felony prosecution for evasion of the tax is most appropriately described as,[43]

"* * * a state of mind of the taxpayer wherein he is fully aware of the existence of a tax obligation to the government which he seeks to conceal. A willful evasion of the tax requires an intentional act or omission as compared to an accidental or inadvertent one. It also requires a specific wrongful intent to conceal an obligation known to exist, as compared to a genuine misunderstanding of what the law requires or a bona fide belief that certain receipts are not taxable. A conviction cannot be sustained unless this state of mind is supported by the evidence and explained to the jury."

No appellate tribunal has as yet been called upon to ascertain the peculiar meaning to be ascribed to willfulness in a felony prosecution for evasion of the payment. It would seem to require that the taxpayer cognizant of his financial obligations to the taxing authority has acted to conceal the means which he possesses or controls to discharge the obligation with the specific intent to defeat or evade the payment of monies due the government.

---

ing liability for obtaining money under false pretenses. The law has always distinguished between failing to disclose useful information and making a disclosure which is a lie."

37. 26 U.S.C. § 2707(b).

38. 26 U.S.C. § 2707(c).

39. Note 20, supra.

40. 4 Cir., 1956, 230 F.2d 56, 61.

41. 3 Cir., 1958, 251 F.2d 638, 639.

42. 3 Cir., 1958, 259 F.2d 872, 882.

43. United States v. Martell, 3 Cir., 1952, 199 F.2d 670, 672.

■ To establish the felony measure of willfulness there must be independent evidence of its existence.[44] Such proof, depending upon the appropriate definition and the particular factual setting before the trier, may include the so-called "badges of fraud" that commonly evidence the "attempt", but the probe is not so limited.[45] For instance, acts occurring both prior and subsequent to the conduct constituting the alleged attempted evasion, may be probative of the subjective state of the accused's mind.[46] Further, the proof need not approach the strict standards required of an attempt [47] to be suitable for jury consideration.

■ Testing the evidence adduced in the instant proceeding against the principles enunciated demonstrates conclusively that the crucial element of "will-

44. Note 16, supra.

45. "First, of course, and probably the most frequent act which it appears will be considered to constitute an attempt to evade and defeat any tax is the very act of filing a false and fraudulent return, with the requisite element of 'wilfulness' accompanying the filing.

"Apart from, or in addition to, the filing of a fraudulent return, may be mentioned the more common types of acts or transactions some of which the Supreme Court in the Spies case spoke of 'by way of illustration' as acts which could be attempts to evade and defeat tax:

"1. Keeping double set of books; or keeping a double set of financial statements, the false one to be presented to the investigating agents.

"2. Making false entries in books or alterations of books.

"3. Making false invoices or documents so as to conceal the true nature of income.

"4. Destruction of books and records.

"5. Concealment of amount or covering up sources of income, usually by assumed or secret bank accounts, or by entering into contracts in the names of dummies or figureheads.

"6. Handling of one's affairs to avoid making the records which are usual in transactions of the kind.

"7. And the catch-all impliedly justified by the clause 'in any manner' appearing in Sec. 145(b), 'any conduct, the likely effect of which will be to mislead or conceal.'

"By indicating some additional types of transactions not as common as those already referred to, which have sustained Sec. 145(b) prosecutions, we should be able better to appreciate what these broad terms mean in actual practice:

"1. Income received as political gratuities or 'graft money' not disclosed by the recipient on the pretext that the money was really a gift.

"2. The fraudulent taking of unjustified deductions based on false inventory.

"3. The sluicing off of corporate income earnings to principal shareholders in the guise of commissions or salaries usually out of proportion to the value of the services rendered to the corporate taxpayer.

"4. Claiming extensive deductions for losses on sales of securities where the securities were sold to close friends at 'bargain prices' and very shortly bought back by the taxpayer.

"5. Setting up elaborate schemes by which paper titles to trucks and farms were put in an employee's name without payment by employee of any money of her own but with the entire series of transactions financed by taxpayer, all with the purpose of postponing income.

"6. Substantial understatement of inventory deliberately contrived to cover up understatement of sales and overstatement of purchases.

"7. Substantial understatement of sales; sometimes accompanied by overstatement of purchases.

"8. Actual loan receivables carried on books as fictitious 'purchases', thus reducing income.

"In a decision sustaining a Sec. 145(b) conviction, Judge Sanborn speaking for the Court of Appeals for the Eighth Circuit [Schuermann v. U. S., 174 F.2d 397, 398 (8 Cir. 1949)], labelled the following acts as the 'usual badges or indicia of the deliberate concealment of income':

"1. Intentional failure to maintain financial records.

"2. A much visited safe deposit box, usually under an assumed name.

"3. Use of large sums of currency in dealings.

"4. Purchase of property in others' names." Balter, Fraud Under Federal Tax Law, 2nd Ed. 1953, pp. 352–353.

46. Note 32, supra; it is important to indicate that for conduct, prior and subsequent, to the substantive attempt to be admissible on the issue of willfulness, the conduct must be such as to establish the existence of the "specific wrongful intent" at the time the purported criminal act transpired. United States v. Palermo, 3 Cir., 1958, 259 F.2d 872, 881.

47. Notes 13, 15, supra.

fulness" was lacking. Defendants were cited for tax evasion; thus to predicate a conviction, the record must disclose that defendants acted with the intent to conceal or defeat an obligation known to exist.[48] The sole acts alleged to substantiate this burden are the diversion of funds and the equivocation attending the failure to issue W–2 statements to employees after inquiry had been made.[49]

The "diversion of funds" was not only incapable of supporting an attempt but also fails to substantiate an inference that it was done to conceal defendants' obligation to the government. There is absolutely no relevancy between the manner in which the defendants disposed of the withholding monies and the conduct that is required to evidence concealment of one's tax obligation. In fact, the uncontradicted proof reflected that defendants preserved the records of Printz, which were employed by the government to ultimately assess defendants' tax liability. It is, of course, conceivable that the diversion of funds which would in effect reduce a taxpayer's net income and concomitant tax would be probative of willfulness in a prosecution for evasion of income taxes under 26 U.S.C. (I.R.C. 1939) § 145(b).[50] The expenditure of withholding monies, however, in no way

alters the determination of the withholding tax liability.

The actions of defendants cited with respect to the W–2 forms for the reasons previously noted were similarly incompetent to establish willfulness.[51]

The court in its determination is not unmindful of the language set forth in United States v. Mesheski: [52]

"The language of the statutes does not suggest that such conduct is the only manner of violation contemplated. Failure to file a return, failure to pay over money entrusted to one for the purpose of paying another's tax, and diversion of such funds if proven would, in the court's opinion, constitute another mode of a willful attempt to evade or defeat the tax or the payment thereof."

The report of the Mesheski case seems to indicate that the accused was engaged in the business of preparing tax returns for taxpayers. In connection with the performance of his services the accused would collect the monies disclosed to be due on the various returns, ostensibly for the purpose of remitting the funds to the federal collector. Instead of transmitting the money to the government, he misappropriated it to his own benefit. It

48. The court charged with respect to the willful element as follows:

"Willfulness is best defined as a state of mind of the taxpayer wherein he is fully aware of the existence of a tax obligation to the Government which he seeks to conceal. A willful evasion of the tax requires an intentional act of commission as distinguished from an act of omission or an accidental or inadvertent one. It also requires a specific wrongful intent to conceal an obligation known to exist. Willfulness must be established by independent evidence and cannot be inferred from the willful failure to file a tax return as required by law." N.T. 569.

"* * * As I have stated before the failure or refusal to file such returns even if it be willful, does not by itself constitute an offense under the statute upon which the defendants are indicted. The Government must prove something more than the willful failure to file the tax returns of the corporation. The Government, in addition, must prove beyond a

reasonable doubt that some scheme, subterfuge or device was resorted to by the defendants to conceal an existing tax obligation in order to evade or defeat the tax. * * *" N.T. 570.

49. Court's charge, N.T. 570–571.

50. "* * * and used corporate funds for personal items, such as to pay his jockey, to pay for insurance on his horses, to pay for repairs to his home, and to buy a television set. * * *" United States v. Smith, 3 Cir., 1953, 206 F.2d 905, 910.

51. Notes 31, 32, 34, supra, and accompanying text.

52. D.C.E.D.Wis.1959, 169 F.Supp. 372, 374, but, note the indictment charges, "that, having prepared the returns and obtained the money for transmittal to the Director of Internal Revenue, defendant did knowingly and willfully attempt to evade and defeat the payment of taxes * * *." 169 F.Supp. 372, 373. (Emphasis supplied.)

is readily perceived, that the facts in Mesheski are significantly distinguishable from those presented in the case at bar. The funds in the instant prosecution never reached the hands of the individual employees. In addition, Printz was required by law to withhold from its employees the income and F.I.C.A. taxes.

The case exhibiting the facts most resembling the immediate action is Yarborough v. United States, wherein the taxpayer was held to have violated the misdemeanor sanction.[53] The present prosecution established no circumstance capable of justifying a charge more severe than that presented in Yarborough. It is of little moment, that the defendants were considerably less than model taxpayers; but, to warrant imposition of the heaviest penalties assessable for noncompliance with the revenue laws, more is required than that produced by the government.[54]

Accordingly, the court directs that an order of acquittal be entered.

53. Note 25, supra.

54. Prosecution of the case was ably presented by government counsel, and the ultimate disposition in no way reflects upon their competence.