**UNITED STATES of America**

v.

**John R. THOMPSON.**

**Cr. No. 10912.**

United States District Court
D. Connecticut.

March 23, 1964.

---

Robert C. Zampano, U. S. Atty., New Haven, Conn., Anthony G. Apicella, Asst. U. S. Atty., New Haven, Conn., for plaintiff.

Wallace R. Burke, Hartford, Conn., for defendant.

TIMBERS, District Judge.

In a three count information John R. Thompson is charged with wilful failure to make personal income tax returns for the taxable years 1956, 1957 and 1959, in violation of 26 U.S.C. § 7203.

The case was tried to the Court without a jury.

With respect to each count of the information the government has the burden of proving the existence of three essential elements of the crime charged:

(1) that defendant was required to make an income tax return for the taxable year in question;

(2) that defendant failed to make a timely income tax return for the taxable year in question; and

(3) that defendant's failure to make a timely income tax return for the taxable year in question was

a "knowing" and "wilful" failure.

### (1) DUTY TO MAKE RETURNS

Any person having a gross income in excess of six hundred ($600) dollars for any taxable year is required to make an income tax return, regardless of whether a tax is due for that year.[1]

By a stipulation [2] defendant admits having and receiving the following amounts for the taxable years in question:

|  | 1956 | 1957 | 1959 |
|---|---|---|---|
| Gross Receipts | $55,110.09 | $92,296.65 | $111,883.74 |
| Taxable Income | 5,529.05 | 10,998.75 | 3,474.25 |

Accordingly, the Court finds that defendant was required to make income tax returns for the taxable years 1956, 1957 and 1959.

### (2) FAILURE TO MAKE TIMELY RETURNS

As a resident of West Haven, Connecticut, during the taxable years in question, defendant was under a duty to make income tax returns for those years to the Director of Internal Revenue for the District of Connecticut at Hartford, Connecticut. The returns had to be filed not later than April 15 of the year following the close of each taxable year involved, or not later than the date of any extension for filing duly granted defendant upon request—such extension for any taxable year not to exceed six months.[3]

The testimony with regard to the request and receipt of extensions for filing for each of the taxable years in question here is in dispute. However, such controversy is immaterial in view of the uncontroverted testimony of government witnesses—including that of federal custodians of tax returns filed with the District Director in Hartford for the taxable years 1956, 1957 and 1959—that defendant *never* made income tax returns for the taxable years in question, and further, in view of defendant's candid admission of failure to make such returns upon his cross-examination by the government's counsel.

Accordingly, the Court finds that defendant failed to make timely income tax returns for the taxable years 1956, 1957 and 1959.

### (3) KNOWING AND WILFUL FAILURE

The final element of the offense charged, which the government must prove with respect to each count of the information, is that defendant's failure to make income tax returns for the taxable years in question was a "knowing" and "wilful" failure. It is the proof of this element which defendant contests most strongly.

Within the context of 26 U.S.C. § 7203 a "knowing" failure is one which is voluntary and purposeful, and not caused by mistake, inadvertence or other innocent reason. Within this same context a "wilful" failure is one which is voluntary, purposeful, deliberate and intentional, as opposed to one which is accidental, inadvertent, or careless.[4] In short, the element of "wilfulness" as used in this statute involves a specific wrongful intent, namely: actual knowledge of the existence of a legal obligation and the intent to evade that obligation.[5]

1. 26 U.S.C. § 6012(a) (1).

2. Received by the Court January 21, 1964 as Government Exhibit E in evidence without objection.

3. 26 U.S.C. § 6081(a).

4. Haner v. United States, 315 F.2d 792, 794 (5 Cir. 1963); United States v. Cirillo, 251 F.2d 638 (3 Cir. 1957); United States v. Litman, 246 F.2d 206, 208–209 (3 Cir. 1957); but see Abdul v. United States, 254 F.2d 292, 293–294 (9 Cir. 1958).

5. Edwards v. United States, 321 F.2d 324, 325 (5 Cir. 1963); see Yarborough v. United States, 230 F.2d 56, 61 (4 Cir.), cert. denied, 351 U.S. 969, 76 S.Ct. 1034, 100 L.Ed. 1487 (1956).

It is not denied that defendant knew of the *initial* obligation imposed upon him by the Internal Revenue laws to make and file timely income tax returns. In attempting to justify his failure to file returns for the years in question, and in denying the government's allegation that such failure was "wilful", defendant relies instead upon what he contends was a continuing *bona fide* belief on his part that he need not make tax returns for the years in question (among others) because of his participation in a so-called "ten year plan."

Although the details of the "ten year plan" were never clearly articulated at the trial, the gist of this defense is that upon notifying the Internal Revenue Service of his intention to participate in a "ten year plan" in August of 1953, defendant believed he was relieved of all duties with respect to the reporting of income under the Internal Revenue laws for a period of ten years, with the exception of having to file yearly requests for extensions of time to file tax returns. (This latter defendant claims to have done.) At the end of the ten year period defendant would then have to file returns (or a composite return) for the years in question.

Not admitting to authorship of the "plan", defendant claims its genesis in the advice of a public accountant—deceased at the time of trial—who was approached by defendant in 1953 when the latter was in doubt as to his ability to file a return for the taxable year 1952 because of uncertainty with regard to whether and when payments owed him pursuant to a certain contract would be made. Consistent with his outline of the "plan", defendant asserts that the now-deceased public accountant was not formally retained by him in 1953 or ever, since he was not to be retained until the close of the ten year period—when the work of income reporting was to be done—at which time the accountant was deceased.

While apparently recognizing at the trial that the so-called "ten year plan"

is without legal basis and insufficient to accomplish the desired ends, defendant nonetheless contends he was never so informed by the Internal Revenue Service; and that while it may now be apparent that he was laboring under a misconception of his duties under the law, his belief in the propriety of the plan during the years involved in the information was *bona fide*. Accordingly, defendant asserts that his failures to make and file returns during the years in question were not "wilful" failures, being based on a misapprehension of his legal obligations, and therefore, that he must be acquitted of the charges against him.

On its face the so-called "ten year plan" appears an improbable concoction. That a seasoned businessman such as defendant could have a sincere belief in its propriety—considering the easy means (little more than an annual letter to the Internal Revenue Service) it affords a taxpayer unilaterally to impose a virtual moratorium for ten years on his duty to report income to the federal government —strains credulity. The Court simply does not buy it. The one element of corroboration which *might* have tended to dispel doubt is lacking: the accountant who is alleged to have advised defendant of the "plan" is deceased. Further, nothing in the testimony of Mr. Roche, a public accountant testifying for the defense, leads the Court to believe that the advice which might normally be given a taxpayer by a public accountant with regard to loss "carry-back" and "carry-over" procedures, even if *in fact* given defendant by the deceased public accountant in this case, would be construed by one in defendant's position to afford the liberties defendant professes to have believed were his under the so-called "ten year plan".

Also bearing on the element of "wilfulness" in defendant's failure to file returns is defendant's attempted concealment of the receipt of income in the form of three checks during the taxable year 1957. The checks, in the amounts of $8,-000, $17,180.71 and $1,643.40, are dated

January 2, 1957, October 10, 1957 and November 14, 1957, respectively.[6]

Defendant contends that the check dated January 2, 1957 was received by him on December 31, 1956, its later date being accounted for by the fact that it was "post-dated". Defendant attempts to corroborate his assertion by reference to a notation in a "diary" he says he made on December 31, 1956 alluding to receipt of the check. The drawer of the check, however, testified that the check was not given defendant before January 1, 1957; that while his company occasionally gave defendant post-dated checks, this check was *not* post-dated; and that he based this latter conclusion on the check's numerical sequence following other checks drawn in January of 1957, on the fact that a notation of post-dating was invariably made by him both on the check and on the "stub" of every check he drew which was post-dated, and on the further fact that no such notation appears either on the check dated January 2, 1957 or on its corresponding "stub".

With respect to the checks dated October 10, 1957 and November 14, 1957, defendant contends they were not received until January of 1958. He asserts they were held up by the drawer—an agency of the federal government—because of a dispute with defendant over payroll procedures pursuant to a construction contract between defendant and the government. The government officer whose prime duties in 1956 and 1957 were the disbursement of funds for the payment of construction contracts, and through whose office the two checks in question were drawn, testified that he had no personal knowledge of whether these checks were mailed to defendant immediately after being drawn in October and November of 1957, primarily because a clerk, and not he, did the actual mailing. On its face this testimony could be characterized as neutral—it neither undermines defendant's assertion that the checks were held up, nor supports it. The inference is not altogether unreasonable, however,

that if the checks *were* held up by his office for respective periods of two and one-half and one and one-half months after being drawn, he *would* have some record of the occurrences; and his having none *could* indicate that the checks were not in fact held up. However, the Court's view of the matter does not depend upon inferences treading so dangerously close to the border of surmise and conjecture. In short, the Court is unconvinced of defendant's attempt to substantiate by reference to a still-vaguely contoured "dispute" with the government his claim that checks dated October and November 1957 were in fact received by him in 1958. As further evidence of "wilfulness" in defendant's failure to make timely returns, then, the Court notes defendant's attempted concealment of his receipt of gross income, aggregating in the amount of $26,824.11 during 1957, one of the taxable years in question.

A final factor to which the Court draws attention as bearing upon the element of "wilfulness" is testimony relating to defendant's concealment from government agents investigating his failure to make returns the existence of two bank accounts in which income of defendant had been deposited, and further testimony relating to his evasive tactics in carrying out his professed desire at the time of the investigation to "cooperate" with the investigating government agents. While this testimony is in conflict—the agents asserting the concealment and evasive tactics, defendant denying them—the Court taking into consideration the demeanor of all the witnesses on the stand, any interest which they may have in the outcome of the case, the inherent consistency or inconsistency of their testimony, and its corroboration or lack thereof in other evidence, is inclined to believe the testimony of the government agents.

It should be noted, however, that neither the evidence of concealment of income in a given year and of the existence of certain bank accounts, nor the evidence of other evasive tactics of defendant at

---

6. These checks are Government Exhibits V, R, and T, respectively.

the time of investigation *in themselves* form the basis of the Court's conclusion on the element of "wilfulness". Because these events occurred *after* that time when defendant's state of mind is crucially important—namely, when the filing of returns was due—they bear only indirectly on that earlier state of mind. On the other hand, it cannot be said they are in no way probative of defendant's "wilfulness" at the time he failed to make and file timely tax returns; and when considered along with the implausibility of defendant's claimed belief in the legality of the so-called "ten year plan"—which belief in fact comprises defendant's main defense—these ancillary matters corroborate the Court's conclusion.

■ Accordingly, the Court finds that defendant's failure to make timely income tax returns for the taxable years 1956, 1957 and 1959 was in each instance "knowing" and "wilful" and, therefore, in each case, a violation of 26 U.S.C. § 7203.

## DEFENDANT'S CLAIM OF VARIANCE

■ There is no merit to defendant's final contention—overruled at the trial—that a variance between what is charged in count one of the information and what was proved at the trial requires a dismissal as to that count. Count one of the information charges defendant with wilfully failing to make an income tax return for the taxable year 1956 on or before April 15, 1957. In fact, it was proved at the trial that defendant requested and received an extension of time to July 15, 1957 within which to file his return for the taxable year 1956. As a result of this variance defendant claims he was surprised and therefore prejudiced in the defense of his case.

The allegations setting forth the charges which vary from the proof are contained in an information. Rule 7(e) of the Federal Rules of Criminal Procedure provides:

> "The court may permit an information to be amended at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced."

If requested by the government the Court would have permitted amendment of the information to cure the variance at any time since no additional or different offense would have been charged, and no substantial rights of defendant would have been prejudiced thereby. Even in the absence of such amendment the Court is hard pressed to see how defendant was prejudiced at trial because of the variance. Defendant was well apprised of the fact of the extension granted him for filing the 1956 return well in advance of trial. Further, defendant testified at the trial that he *never* filed a return for the taxable year 1956.

Accordingly, the Court finds that defendant's claim that he was prejudiced in his defense to count one of the information because of the variance between the charges therein and the proof at trial is without foundation.

## CONCLUSION

■ Giving full effect to the presumption of innocence, the Court nevertheless finds that the government has sustained its burden of proving beyond a reasonable doubt each essential element of the crime charged in each of the three counts of the information.

The Court accordingly finds defendant guilty as charged in each count.

The case will be continued pending receipt of a pre-sentence report. Sentence will be imposed Monday, April 6, 1964, at 10:00 A.M. in New Haven.

Defendant may remain at liberty on the $1,000 bond now in effect, pending imposition of sentence.