**UNITED STATES of America**

v.

**Eugene F. HOUSE, Appellant in No. 74–1450.**

**Appeal of Evelyn M. HOUSE in No. 74–1451.**

**Nos. 74–1450, 74–1451.**

United States Court of Appeals, Third Circuit.

Argued Sept. 11, 1975.

Decided Oct. 17, 1975.

As Amended on Denial of Rehearing April 2, 1976.

S. John Cottone, U. S. Atty., James W. Walker, Asst. U. S. Atty., Scranton, Pa., for appellee.

Robert W. Maris, Solomon Fisher, Dilworth, Paxson, Kalish & Levy, Philadelphia, Pa., for appellants.

Arlene R. Popkin, American Civil Liberties Foundation of Pennsylvania, Philadelphia, Pa., amicus curiae.

Before ALDISERT, GIBBONS and WEIS, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

The appellants Eugene F. House and Evelyn M. House, his wife, appeal from a judgment of sentence [1] on three counts of wilfully and knowingly attempting to evade payment of their federal income tax for the years 1964, 1965 and 1966 in violation of § 7201 of the Internal Revenue Code of 1954, 26 U.S.C. § 7201. They contend that the district court should have granted their motion for a judgment of acquittal on each count because there was insufficient evidence of wilfulness with respect to any year and because there was no evidence sufficient to establish a deficiency in two years. They also contend that their convictions

---

1. The district court sentenced Eugene House to six months imprisonment and fined him $10,000. Evelyn House was fined $10,000.

must in any event be set aside because they are based upon evidence illegally obtained by agents of the Internal Revenue Service. With respect to the counts covering the years 1964 and 1965, we reverse because we agree that the government did not prove a deficiency in taxes. The appellants do not suggest on this appeal that there was insufficient evidence of a deficiency in 1966, but argue (1) that evidence produced at trial was derived from evidence illegally obtained and that there is no legally obtained evidence of a deficiency, and (2) that the jury's determination of wilfulness with respect to 1966 does not enjoy any untainted evidentiary support. We conclude that the evidence of a deficiency for 1966 was not the fruit of illegally obtained evidence, and that the evidence does not support the jury's finding of wilfulness with respect to Eugene House. We believe, however, that there is evidence sufficient to support the jury's finding of wilfulness with respect to Evelyn House, but that on this record a new trial on the 1966 count is appropriate.

## I.  COUNTS I AND II (1964 AND 1965)

■ The taxpayers have since 1948, as proprietors, operated a wood pallet manufacturing business. They maintained only one checking account for their business and private affairs. Mrs. House, a high school graduate, kept the records for the business in a simple but customary manner.[2] Mr. House, who has a ninth grade education, was primarily responsible for the manufacturing end of the business. The taxpayers reported their income for federal income tax purposes on a calendar year cash basis. For the year 1964 and for about ten years prior thereto they had their federal income tax returns prepared by Orville Mase, a banker and public accountant. For the years 1965 and 1966 they had the returns prepared by Charles Spuler, a certified public accountant. The government has made no contention that the returns as filed reflect any overstatement of expenses or other deductions. Its sole contention is that in each of the years in question the gross receipts reported on the return were understated because the taxpayers withheld for deposit in later years, or for negotiation other than through a bank, checks received from customers. As cash basis taxpayers they should properly have included in cash receipts for the tax year all checks actually received from customers in time for deposit in the year covered by the return.[3] *E. g., United States v. Coblentz,* 453 F.2d 503 (2d Cir.), *cert. denied,* 406 U.S. 917, 92 S.Ct. 1766, 32 L.Ed.2d 116 (1972).

■ The elements of a § 7201 offense are (1) wilfulness, (2) the existence of a

2.  To determine the business income for the tax year, Mrs. House totaled invoices paid during that year. Deductible business expenses for the tax year were derived from the stubs of their check book.

3.  In each of the three years the taxpayers' business expanded. There is no evidence suggesting that in later years there were larger offsetting deductions. Since tax rates were not declining, shifting income forward would not appear to have the effect of depriving the government of revenue. In *Sansone v. United States,* 380 U.S. 343, 354, 85 S.Ct. 1004, 1011, 13 L.Ed.2d 882 (1965), Justice Goldberg, citing *Lawn v. United States,* 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958), stated that "§ 7201 includes the offense of willfully attempting to evade or defeat the *assessment* of a tax as well as the offense of willfully attempting to evade or defeat the *payment* of a tax." (emphasis in original). In *Sansone* the Court does

not say whether both offenses were charged in the indictment, but in *Lawn* the indictment charged the taxpayers with evading, and conspiring to evade, assessment *and* payment. In this case the indictment charges only wilful evasion of payment. If evasion of assessment and evasion of payment are separate offenses, the element of wilfulness may not be identical, especially for a cash basis taxpayer who is merely deferring income to a later year. The government tried the case and the court charged on the theory that the taxpayers were wilfully evading payment. Thus there is no need to consider whether, when the indictment fails to charge evasion of assessment, that offense may nevertheless be proved, or whether, if both evasion of assessment and evasion of payment are charged in a single count the indictment may be duplicitous. The taxpayers were not charged with failure to make timely payment, 26 U.S.C. § 7203, or with filing a false return, 26 U.S.C. § 7207. Both of the

tax deficiency, and (3) an affirmative act constituting an evasion or attempted evasion of the tax. *Sansone v. United States, supra,* 380 U.S. at 351, 85 S.Ct. 1004; *United States v. Petti,* 448 F.2d 1257 (3d Cir. 1971). The government has the burden of proving each element beyond a reasonable doubt, including the element of tax deficiency. The evidence discloses that Mrs. House kept a record of payments received from customers by marking "paid" on the retained copy of the invoice to customers when payment was received. She also kept in a spiral notebook a record of bank deposits. When it came time to prepare a tax return she made a tabulation of the "paid" invoices and furnished this tabulation to Mase and Spuler to assist them in preparing the tax returns. The accountants reported the total from this tabulation as total sales (gross receipts for a cash basis taxpayer) on Schedule C of the Houses' Form 1040.

In December of 1967 Revenue Agent Viard commenced a routine audit of the Houses' 1965 return. He was able to reconcile the gross receipts reported on the return with the record kept by Evelyn House (118a–20a). He found, however, that bank deposits in 1965 exceeded reported gross receipts. Since he was leaving for military service Viard turned over the results of his partially completed field audit to Revenue Agent Klenkosky. He informed Klenkosky that Eugene House had said he would send his records to Mr. Spuler to have Spuler try to reconcile the differences between the 1965 reported gross receipts and the 1965 deposits. Klenkosky examined the taxpayers' records at Spuler's office and was unable to reconcile the differences between the 1965 total invoices, the 1965 total deposits, and the 1965 reported gross receipts. He concluded that an examination of the 1964 and 1966 records and tax returns would be required for such a reconciliation. He copied from the invoices and the spiral notebook a

list of House customers and obtained from these customers copies of all checks which they had sent in payment of House invoices during the three years.

■ In response to a bill of particulars the government contended that it could prove an understatement, and hence a deficiency, by totaling the customer checks dated in a given year, and contrasting that total with the gross receipts shown in Schedule C. This contention may be summarized:

| | Customer Checks dated in a given year | House Schedule C | Alleged understatement |
|---|---|---|---|
| 1964 | $295,510.84 | $246,720.40 | ($48,790.44) |
| 1965 | $312,527.51 | $283,602.89 | ($28,924.62) |
| 1966 | $439,596.31 | $363,419.93 | ($76,176.38) |

There is no evidence, other than the date on the face of each customer check, tending to show when it was mailed, or when it was received by the Houses. The actual checks, however, show that checks dated in one year were deposited in a later year as follows:

Checks dated in 1964 deposited early in 1965  $80,883.07
Checks dated in 1965 deposited early in 1966  $78,832.42
Checks dated in 1966 deposited early in 1967  $40,905.40

There is no evidence as to whether any checks dated in 1963 were deposited early in 1964. The government made no attempt in the evidence to reconcile the 1964 deposits with the invoices which Evelyn House marked "paid" in 1963 or in 1964. The sole evidence of the $48,790.44 1964 understatement relied on by the government was the deposit, in 1965 of $80,883.07 in checks dated in 1964. Since the alleged understatement for 1964 is only $48,790.44, some $32,092.63 of the checks dated in 1964 but deposited in 1965 must have been included in the receipts reported on the 1964 Schedule C, even on the government theory. But if these cash basis taxpayers did not receive $48,790.44 of these checks until after December 31, 1964, there clearly was no understatement of gross receipts in that amount, and there was no proof of a deficiency for 1964.

latter sections provide for lesser sentences than does the felony of wilful tax evasion for which taxpayers were indicted. The court did not charge that the offenses proscribed by

§ 7203 and § 7207 were lesser included offenses in the § 7201 charge. *See Sansone v. United States, supra,* 380 U.S. at 351, 353, 85 S.Ct. 1004.

The complete absence of any evidence as to whether the taxpayers received checks totaling $48,790.44 in time to deposit them prior to January 1, 1965 leaves a critical gap in the government's proof of deficiency for 1964. The same gap applies with respect to the claimed deficiency for 1965. In that year, on the government's theory, the reported receipts included $49,907.80 of checks dated in 1965 but deposited in 1966, and there is no proof that the $28,924.62 difference was received by the taxpayers prior to January 1, 1966.

The government also proved that in 1964 and 1965 Eugene House instead of depositing twelve checks in the sum of $21,881.49, negotiated them to third parties.[4] This contrasts with total reported gross receipts for those two years of $530,323.29. The government did not show that the checks negotiated rather than deposited were excluded from reported gross receipts in either year. Indeed, it did not in its calculation of deficiency treat these items specifically. The negotiated checks do not serve to remedy the lack of evidence of deficiency for the years 1964 and 1965, even though evidence of negotiation rather than deposit may have been evidentiary on the issue of wilfulness.

In ruling on the Houses' motion for a judgment of acquittal the district court said:

An analysis of invoices and cancelled checks of defendants' customers revealed, as noted above, substantial understatement of income for 1964, 1965 and 1966. Furthermore, approximately $80,000 in checks *received* in 1964 was withheld and not deposited or negotiated until 1965; $78,000 in 1965 was not deposited until 1966, and $40,-000 in 1966 was not deposited until 1967. (376a; emphasis supplied).

The flaw in the district court's reasoning is the assumption, without evidentiary support, that all customer checks dated in one year were received in that year.

The district court may have relied on representations of the parties at pre-trial on July 11, 1973, that a stipulation was entered into by the parties as to "the dates when these checks, principally the checks, were cashed and also admitted by the Government." Pre-Trial Transcript at 8. A careful examination of the record, however, indicates that no such stipulation was entered of record either at pre-trial or at trial. Without such stipulation, it may not be assumed that all customer checks dated in one year were received in that year. A mere assumption, without evidentiary support or a stipulation of record, does not relieve the government of proving an essential element of its cases. The government was obliged to prove receipt of the customers' checks; the defendants had no obligation to establish non-receipt. *Cf. Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). Their motion for a judgment of acquittal on Count I (1964) and Count II (1965) should have been granted on the ground that the government failed to prove a tax deficiency for those years.

## II.   COUNT III (1966)

The Houses do not dispute that the government's evidence was sufficient to establish a deficiency for the 1966 return. They contend, however, that there was insufficient legally obtained evidence to support the verdict, that the evidence of wilfulness was insufficient to withstand a motion for a judgment of acquittal, and that in any event, a new trial is required.

### A.   *Illegally obtained evidence*

■ As we pointed out heretofore, Agent Klenkosky went to Mr. Spuler's office and examined invoices and other records belonging to the Houses. From these records he compiled a list of customers, and as a result of this list he was able to obtain the customer checks

---

4. The evidence showed that House negotiated checks totaling $19,681.71 to a brokerage firm, Carl M. Loeb & Rhodes Company, for record-ed stock purchases, and checks totaling $2,199.78 to merchants in his home area.

which were the evidentiary basis for the prosecution. Thereafter Klenkosky took the records from Spuler's office to the Internal Revenue office. Later still, crediting his testimony (which Mr. House disputes)[5] he returned them to House at the latter's place of business. Prior to trial the defendants contended that all evidence obtained as a result of the examination of their records should be suppressed because the examination and seizure of the records were made without the benefit of a summons, in excess of the summonsing authority vested in the Internal Revenue Service by 26 U.S.C. § 7602(2)[6] and procedures pertaining thereto, 26 U.S.C. § 7603,[7] and in violation of their fourth amendment rights. After an evidentiary hearing the district court denied the suppression motion. It found that Eugene House had turned over the records to Spuler in order "to explain certain things to the Revenue Agent that there was a question about," (65a) and by this action authorized Spuler to allow Agent Klenkosky to examine them. While there is no specific testimony that House authorized Spuler to let the agent examine the records,[8] the court's finding that Spuler had such authority is compelled by the evidence that he was authorized, without any specific limitation, to deal with the agent in connection with the civil audit. Thus any search of the records at Spuler's office was consensual, and not violative of the Houses' fourth amendment rights. *Schneckloth v. Bustamante,* 412 U.S. 218, 222, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

House contends, however, that it is one thing to permit an agent to examine the records in the possession of his accountant, but quite another for the agent to seize them and carry them off to an Internal Revenue Service office. The district court found that on January 17, 1968 Spuler granted permission to Agent Klenkosky to pick up the defendants' records and deliver them to Mr. House. The court did not find, and the evidence does not suggest that the Houses had authorized Spuler to deliver their property to the government agent. Indeed, Klenkosky testified at the suppression hearing that neither defendant gave him permission to take the records from Spuler's office. (53a).

The Internal Revenue Service might well have obtained enforcement of an

---

**5.** Mr. House has consistently denied that Agent Klenkosky returned the records which he took from Spuler's office, and they were not produced at the trial. In the suppression hearing the district court found that the records were returned. The contention that the records were never returned was renewed at the jury trial, but the jury verdict, while not necessarily inconsistent with a belief in House's version, strongly suggests that it resolved this credibility issue in the same manner as did the court.

**6.** 26 U.S.C. § 7602:

"For the purpose of ascertaining the correctness of any return, . . . determining the liability of any person for any internal revenue tax . . . , or collecting any such liability, the Secretary or his delegate is authorized—

.   .   .   .   .

(2) To summon . . . any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax . . . or his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data . . . as may be relevant . . . ."

**7.** 26 U.S.C. § 7603:

"A summons issued under section 6420(e)(2), 6421(f)(2), 6424(d)(2), or 7602 shall be served by the Secretary or his delegate, by an attested copy delivered in hand to the person to whom it is directed, or left at his last and usual place of abode; and the certificate of service signed by the person serving the summons shall be evidence of the facts it states on the hearing of an application for the enforcement of the summons. When the summons requires the production of books, papers, records, or other data, it shall be sufficient if such books, papers, records, or other data are described with reasonable certainty."

**8.** In his direct testimony at trial, Eugene House said that at no time had he authorized Spuler to show his records to Klenkosky. (302a).

internal revenue summons for records the property of the taxpayer but in the possession of a third party. *See* 26 U.S.C. §§ 7602(2), 7604(b). But that possibility does not justify the seizure without process, for administrative subpoenas are not self-executing,[9] and a court in an enforcement proceeding might have held that the records were protected by the fourth or fifth amendment,[10] or that the seizure was for an improper purpose.[11] There can be no question of an owner's standing to object to a *seizure* of his property without consent and without the benefit of any process, even when a third party has temporary possession of that property.[12]

But assuming that the seizure of the records was both without consent and without the benefit of process, in this case the uncontradicted and credited testimony establishes that none of the evidence used against the Houses was the fruit of that seizure.[13] In the suppression hearing Klenkosky testified that while he was at Spuler's office he compiled a list of the Houses' customers from the invoices for the year 1965 (39a), that he obtained no customer information for 1964 (59a) or 1966 (60a), and that he returned the records to Mr. House following the seizure. The court credited this testimony. There is no evidence that between compiling the customer list from the 1965 invoices, which he examined with consent, and redelivery of the records to House, anyone in the government made any use of them. At the trial he testified that he had also while at Spuler's office looked at a spiral notebook which contained customer names (141a). But his uncontradicted testimony is that, except for bank records to which reference will be made hereafter, all the third party information was obtained as a result of the listing of customers which was made in Spuler's office (140–41a). There is no evidence suggesting that the subsequent seizure of the records from Spuler's office contributed in any manner to the government's case. Thus there was nothing to suppress.[14]

---

9. *United States v. Biscegli,* 420 U.S. 141, 146, 95 S.Ct. 915, 43 L.Ed.2d 88 (1975); *Reisman v. Caplin,* 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1963); *Brimson v. ICC,* 154 U.S. 447, 38 L.Ed. 1047 (1894). The Internal Revenue Code of 1954 allows for judicial enforcement against persons who neglect or refuse to obey a properly-issued summons, 26 U.S.C. § 7604(b), but makes no provision for administrative sanctions.

10. *See Boyd v. United States,* 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886). *But compare United States v. Fisher,* 500 F.2d 683, 693 (3d Cir. 1974) (en banc) (Gibbons, J., concurring), *cert. granted,* 420 U.S. 906, 95 S.Ct. 824, 42 L.Ed.2d 835 (1975) (No. 74–18); *In re Horowitz,* 482 F.2d 72, 75–79 (2d Cir.), *cert. denied,* 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973); *United States v. Beattie,* 522 F.2d 267 (2d Cir. 1975), *petition for cert. filed,* 44 U.J.L.W. 3150 (U.S. Sept. 15, 1975) (No. 75–407).

11. *E. g.,* for harassment or for use in criminal prosecution. *United States v. Biscegli,* 420 U.S. 141, 150–51, 95 S.Ct. 915, 43 L.Ed.2d 148 (1975); *United States v. Powell,* 379 U.S. 48, 58, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964); *Donaldson v. United States,* 400 U.S. 517 (1971); *United States v. McCarthy,* 514 F.2d 368, 372, 375 (3d Cir. 1975); *United States v. Fisher,*

500 F.2d 683, 686–87 (3d Cir. 1974) (en banc), *cert. granted,* 420 U.S. 906, 95 S.Ct. 824, 42 L.Ed.2d 835 (1975) (No. 74–18).

12. *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

13. In view of our disposition of this issue, we find it unnecessary to decide the question addressed by the Brief Amicus Curiae of the American Civil Liberties Foundation, i. e., the constitutionality of the summonsless and unconsented to seizure of the Houses' records by Revenue Agent Klenkosky.

14. We recognize, of course, that once it is established that evidence has been unconstitutionally seized, the government has the burden of proving by a preponderance of the evidence that any evidence admitted at trial can be traced to an independent and lawful source. *See United States v. Falley,* 489 F.2d 33, 38–39 (2d Cir. 1973); *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). We are satisfied on this record that the government met its burden. Klenkosky testified without contradiction that all third party information used to reconstruct the Houses' financial affairs for 1964–66 was obtained as a by-product of his lawful inspection of the Houses' records at Spuler's office.

The Houses also contend that the examination by Klenkosky at Spuler's office was a second audit of the same year, 1965, without notice from the Secretary, in violation of 26 U.S.C. § 7605(b).[15] They urge that Agent Viard made one complete inspection of taxpayer's books and that Klenkosky's subsequent examination at Spuler's office was, in the absence of the notice specified in § 7605(b), a violation of their statutory rights which requires suppression of the evidence obtained therefrom. The question whether a violation by the government of § 7605(b) is a ground for a suppression motion in a criminal case has not been definitively answered. This court has not considered it. The Court of Claims has, in civil tax refund suits, refused to suppress. *Field Enterprises, Inc. v. United States,* 172 Ct.Cl. 77, 348 F.2d 485 (Ct.Cl.1965), *cert. denied,* 382 U.S. 1009, 86 S.Ct. 614, 15 L.Ed.2d 525 (1966); *Philip Mangone Co. v. United States,* 54 F.2d 168 (Ct.Cl.1931). The Seventh Circuit in a similar civil context set aside a deficiency assessment based on a second examination without notice. *Reineman v. United States,* 301 F.2d 267 (7th Cir. 1962). *See also Hinchcliff v. Clarke,* 230 F.Supp. 91, 109 (N.D.Ohio 1963), *rev'd,* 371 F.2d 697 (6th Cir.), *cert. denied,* 387 U.S. 941, 87 S.Ct. 2073, 18 L.Ed.2d 1327 (1967). The only cases which, so far as our research discloses, have discussed the suppression issue in a criminal case are *United States v. Dawson,* 400 F.2d 194, 199 (2d Cir. 1968), *cert. denied,* 393 U.S. 1023, 89 S.Ct. 632, 21 L.Ed.2d 567 (1969), in which the Second Circuit noted the problem but found no § 7605(b) violation, and *Application of Leonardo,* 208 F.Supp. 124 (N.D.Cal. 1962), in which Judge Sweigert found a § 7605(b) violation and granted a pre-indictment suppression motion.

We need not rehearse the competing considerations in favor of and opposing application of the suppression remedy for the enforcement of § 7605(b), for like the Second Circuit in *United States v. Dawson, supra,* we find no § 7605(b) violation. In *Dawson* there was a § 7605(b) notice. Here there is no such notice, but the occasion for one never arose because the first examination was never completed. When Agent Viard first visited the House place of business he was unable to reconcile the gross receipts reported in the 1965 return with bank deposits for that year. With taxpayers' agreement the examination was continued to a later date at Spuler's office. The fact that Agent Viard left for military service and Agent Klenkosky took up the field audit of the 1965 return did not convert the session at Spuler's office into a second examination of the 1965 return.[16] The statute cannot be construed so mechanically that each of these visits were separate examinations, for in a large business a single examination may require the attention of one agent over several days or even of several agents. On this record the factual predicate for the Secretary's obligation to give notice of a second examination never arose.

Moreover, if the taxpayers had felt aggrieved by the proposed visits to Spuler's office or their own, they could have resisted them and forced the Internal Revenue Service to resort to a subpoena. If they had, they could have obtained judicial review of both the necessity for a notice and the propriety of a second examination.[17] We can hardly countenance as a ground for suppression an examina-

**15.** 26 U.S.C. § 7605(b):

"Restrictions on examination of taxpayer. —No taxpayer shall be subjected to unnecessary examination or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary or his delegate, after investigation, notifies the taxpayer in writing that an additional inspection is necessary."

**16.** At the session at Spuler's office Klenkosky also was unable to reconcile the discrepancy between the 1965 return and the 1965 bank deposits. He continued the 1965 examination on a later date at the House place of business. He concluded it when he suspected fraud.

**17.** *See United States v. Powell,* 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964).

tion to which the taxpayer, having available alternatives, consented.

Thus we conclude that there is no ground, constitutional or statutory, upon which the district court should have suppressed evidence with respect to the year 1966, obtained as a result of the examination of the Houses' records for the year 1965.

■ The taxpayers also urge that some of the government's evidence derived from its procurement of customer names for 1966 through the examination of microfilms of checks deposited in their bank account. These records were examined with the consent of the bank, whose property they are, and without a subpoena. These microfilms were so far as the record discloses maintained by the bank voluntarily for its own purposes. Thus the issues presented by the *compulsory* record keeping provisions of the Bank Secrecy Act of 1970,[18] left open in *California Bankers Ass'n v. Schultz,* 416 U.S. 21, 52–57, 94 S.Ct. 1494, 39 L.Ed.2d 812 (1974), are not presented. Nevertheless, relying on *United States v. Miller,* 500 F.2d 751, 756–58 (5th Cir. 1974), *cert. granted,* 43 U.S.L.W. 3641 (U.S. June 9, 1975) (No. 74–1179), the Houses urge that the summonsless seizure of the microfilms from the bank violated their fourth amendment rights.[19]

We have some difficulty both with Judge Goldberg's reasoning in that part of *United States v. Miller* upon which taxpayers rely and with its applicability to defendants' situation. Assuming that in a § 7604(b) summons enforcement proceeding directed against the bank the defendants could have intervened to assert personal interests,[20] the Houses must first show that the loss of the opportunity to intervene deprived them of some such interest. In contrast with their own records in Spuler's possession, they have no property interest in the bank microfilms.[21] Any contention that either the fourth or fifth amendment creates for them a privacy interest in the bank's records would seem to have been put to rest by *Couch v. United States,* 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973), a case to which Judge Goldberg makes no reference in *Miller.* Certainly it would be difficult, since *Couch,* to imagine on what basis we could hold that the taxpayers, when they made their bank deposits and invoked the bank's assistance in collecting third party negotiable instruments, entered a constitutionally protected zone of privacy. Whether under the Bank Secrecy Act of 1970 or some other enactment there is such a zone of privacy statutorily protected is an issue not presented in this case. The Houses refer us to no applicable statute.

Thus we conclude that there is no ground, constitutional or statutory, upon which the district court should have suppressed evidence obtained as a result of the examination of the bank microfilms.

### B. *Wilfulness*

■ Both appellants contend that they were entitled to a judgment of acquittal at the end of the government's case because there was no proof that they acted wilfully in creating a tax deficiency. The law is clear that proof

**18.** Act of Oct. 26, 1970, Pub.L. No. 91–508, 84 Stat. 1114, 12 U.S.C. §§ 1829b, 1730b, 1951–59; 31 U.S.C. §§ 1051–62, 1081–83, 1101–05, 1121–22.

**19.** In *United States v. Miller,* supra, the Fifth Circuit suppressed evidence obtained from copies of bank checks seized from the depositor's bank by means of a faulty grand jury subpoena duces tecum. The court held that the government activity, supported by defective legal process, violated the depositor's fourth amendment right to privacy.

**20.** This court so held in *United States v. Bank of Commerce,* 405 F.2d 931 (3d Cir. 1969),

citing *Reisman v. Caplin,* 375 U.S. 440, 445, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964). But that case did not decide whether the intervenors had any substantive rights; it held only that they had standing to be heard. *Contra, United States v. Continental Bank & Trust Co.,* 503 F.2d 45, 49 (10th Cir. 1974). *See also California Bankers Ass'n v. Schultz, supra,* 416 U.S. at 51, 94 S.Ct. 1494.

**21.** *See, e. g., Jones v. United States,* 362 U.S. 257, 261–62, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

that income has been understated is not, without more, sufficient evidence on this element of the offense to sustain a conviction. *Holland v. United States,* 348 U.S. 121, 139, 75 S.Ct. 127, 99 L.Ed. 150 (1954).

 The Houses are not identically situated with respect to this issue. Evelyn House kept their business records, prepared the 1966 tabulation of gross receipts which for purposes of this appeal is conceded to be understated, and signed the return. There was certainly a jury question with respect to her wilfulness. There is no direct evidence connecting Eugene House with the preparation of the 1966 tabulation of gross receipts given to Mr. Spuler, and there is only slight evidence connecting him to the bookkeeping function. Unlike 1964 and 1965, there is no evidence that in 1966 he negotiated rather than deposited customer checks. There is, however, evidence from which the jury could have found that after the investigation commenced he took steps to conceal the Houses' 1965 business records and thereby to thwart the Internal Revenue Service investigation. He argues that this evidence cannot bear upon his wilfulness prior to 1967 when the return was filed. He also argues that since the government had already seen the 1965 records, proof of their later disappearance does not suggest intent to conceal, and is in any event irrelevant to his wilfulness with respect to another tax year. The question of wilfulness is uniquely for the trier of fact.[22] Recognizing this principle Judges Aldisert and Weis nevertheless conclude that on the evidence in this record bearing on the year 1966 a judge passing on a motion for a judgment of acquittal with respect to that year must properly have concluded that there should be a reasonable doubt in the mind of a reasonable juror. *See Curley v. United States,* 81 U.S.App.D.C. 389, 160 F.2d 229 (D.C.Cir.1946), *cert. denied,* 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947); 2 C. Wright, Federal Practice

and Procedure § 467 (1969). They would reverse on the third count as to Mr. House. I would go no further than to grant a new trial.

 We agree that it is appropriate, however, that Mrs. House be granted a new trial on the third count of the indictment because the jury in considering that count was exposed to considerable evidence bearing on wilful conduct in prior years for which the government failed to prove a deficiency, and on alleged deficiencies for prior years which the trial court erroneously held to be legally sufficient. A new trial will be granted to Mrs. House in which the jury's deliberations will be free from any taint arising out of admission of such evidence. 28 U.S.C. § 2106. The judgment of sentence of Mr. House will be reversed.

---

**22.** *Spies v. United States,* 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418 (1943).