**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Victor S. VOORHIES,**
**Defendant-Appellant.**

**No. 80–1725.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 10, 1981.

Decided Oct. 8, 1981.

---

Harvey D. Tack, Hochman, Salkin &
DeRoy, Beverly Hills, Cal., for defendant-
appellant.

Debra Wright, Washington, D. C., argued, for plaintiff-appellee; Michael L. Paup, Chief App. Sec., Washington, D. C., on brief.

Before FARRIS and NELSON, Circuit Judges, and CARROLL,* District Judge.

FARRIS, Circuit Judge:

Victor Voorhies appeals his convictions for two counts of willful evasion of the payment of income taxes for calendar years 1970 and 1972. See 26 U.S.C. § 7201 (1976). He contends that (1) a conviction for evasion of the payment of taxes cannot be based on a determination and assessment of tax liability made final only after the period of criminality alleged in the indictment; (2) even if a conviction can be so based, tax liability cannot be established solely by the opinion testimony of the examining revenue agent; and (3) his acts during the period covered by the indictment were insufficient to constitute a willful attempt to evade or defeat payment of his 1970 and 1972 income taxes. See 28 U.S.C. § 1291 (1976). We affirm.

## I. FACTS

During an audit of Voorhies' 1971 federal income tax return in 1973, revenue agent Nelson discovered that Voorhies had not filed personal returns for the 1970 and 1972 calendar years. Using bank statements, cancelled checks, and wedding receipts furnished by Voorhies' accountants, Nelson prepared substitute returns for 1970 and 1972. Voorhies did not sign these returns.

On January 18, 1974, Voorhies' corporation, United Chapel Associates, closed the sale of its wedding chapel business to Smith. The corporation received, as proceeds of the sale, a $76,486.24 check from escrow[1] and a $125,000.00 note from Smith. Voorhies exchanged the escrow check at Valley Bank of Nevada for eleven cashier's checks. He sold the Smith note to Wright for gold coins and a platinum bar valued at $50,000.00.

Voorhies traveled to Europe in late January, 1974. In that same year, he returned to the United States, traveled to the South Pacific, and returned to Europe. Customs information forms indicated that Voorhies took $11,900.00 out of the United States on January 31, 1974; that he either took $8,400.00 out of or into the United States on February 17, 1974; and that he brought $7,600.00 into the United States on April 30, 1974. An IRS form signed by Voorhies, which inaccurately reported his social security number, indicated that he had exchanged $30,000.00 in United States currency for 100,000 Swiss francs in Zurich in August 1974.[2] Nine of the eleven cashier's checks were negotiated through Swiss Bank Corporation of Zurich in 1974.

A "30-day letter" proposing assessment of $12,345.00 plus penalties for 1970 and of $20,885.00 plus penalties for 1972 was mailed to Voorhies on February 12, 1974. A statutory notice of deficiency (or "90-day letter") relating to these 1970 and 1972 assessments was mailed to Voorhies on June 7, 1974.[3] Assessments of audit defi-

---

* Honorable Earl H. Carroll, United States District Judge for the District of Arizona, sitting by designation.

1. A tax lien of $37,254.76 against the corporation for the taxable year ending March 31, 1971, was also paid from the escrow account.

2. On November 3, 1973, Voorhies had been detained by a customs agent at John F. Kennedy International Airport. He was found to be bringing $13,367.00 in United States currency into the United States without declaration. The agent found documents from Swiss banks, apparently involving silver deposits, which he photocopied and returned to Voorhies, and two keys to Swiss safety deposit boxes. This detention preceded the period covered by the indictment but is probative of whether Voorhies had Swiss bank accounts and of his knowledge of customs reporting duties.

3. The statutory notice of deficiency is a prerequisite to assessment of unagreed income tax. If the taxpayer fails to petition the Tax Court within 90 days, or within 150 days if he is out of the country, the Internal Revenue Service may assess the tax. See 26 U.S.C. § 6213 (1976).

ciencies and statutory penalties were made on February 3, 1975, for the 1972 tax year and on February 24, 1975, for the 1970 tax year.

Voorhies was indicted on January 16, 1980, on five counts of willfully attempting to evade payment of taxes during the period from January 18 through September 4, 1974. The indictment charged that Voorhies had removed assets from the United States, placed them beyond the reach of service of process, and concealed and attempted to conceal them and their location from the IRS. *See* 26 U.S.C. § 7201 (1976).

■ A bench trial was held in the District of Nevada on July 23–25, 1980. Voorhies testified that, when he left the country, he carried all his assets, including cash and the gold coins, as "cash on hand." He further testified that he returned to the United States with the gold coins and "sixty, seventy" thousand dollars, although no customs declaration forms filed by him reported such large amounts. Voorhies testified that he never deposited assets in a Swiss bank account and left no money in Switzerland. Voorhies also testified at trial that, when he left for Europe in January 1974, he was unaware that he owed additional federal taxes.[4]

At the conclusion of the trial, the court found Voorhies guilty of willfully attempting to evade the payment of personal taxes for the 1970 and 1972 calendar years. Voorhies was sentenced by the district court on October 6, 1980.

## II. AMOUNT OF TAX LIABILITY FIXED AFTER INDICTMENT PERIOD

■ 26 U.S.C. § 7201 (1976) provides that:

Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment

thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the costs of prosecution.

Section 7201 includes both the offenses of willfully attempting to evade or defeat the assessment of a·tax as well as the offense of willfully attempting to evade or defeat the payment of a tax. *Sansone v. United States*, 380 U.S. 343, 354, 85 S.Ct. 1004, 1011, 13 L.Ed.2d 882 (1965) (citing *Lawn v. United States*, 355 U.S. 339, 361, 78 S.Ct. 311, 323, 2 L.Ed.2d 321 (1958)); *Cohen v. United States*, 297 F.2d 760, 770 (9th Cir.), *cert. denied*, 369 U.S. 865, 82 S.Ct. 1029, 8 L.Ed.2d 84 (1962). The elements of both section 7201 violations are (1) willfulness, (2) existence of a tax deficiency, and (3) an affirmative act constituting an evasion or attempted evasion of the tax. *Sansone*, 380 U.S. at 351, 85 S.Ct. at 1010; *United States v. House*, 524 F.2d 1035, 1038–39 (3d Cir. 1975); *United States v. England*, 347 F.2d 425, 438 (7th Cir. 1965).

Voorhies contends that the second element, the "existence of a tax deficiency," can be predicated only on tax liabilities which have been finally determined and assessed and that his tax liabilities had not been determined during the period covered by the indictment. He notes that the statutory language of section 7201 refers only to the payment of "any tax imposed by this title." The Supreme Court in *Sansone*, 380 U.S. at 351, 85 S.Ct. at 1010, referred merely to "the existence of a tax deficiency" and did not define the formalities which such a deficiency must meet. Voorhies' argument is based primarily on 26 U.S.C. § 6213 (1976), which provides in part that no deficiency assessment nor proceeding for collection of tax shall be made until the statutory deficiency notice has been mailed to the

---

4. Voorhies testified that he had received no IRS notices about his 1970 and 1972 personal taxes when he left the country in January 1974. Actual receipt of the notices, however, is not statutorily required. *See Cohen v. United States*,

297 F.2d 760, 771–73 (9th Cir.), *cert. denied*, 369 U.S. 865, 82 S.Ct. 1029, 8 L.Ed.2d 84 (1962) (that notices were mailed to last permanent address of taxpayer was sufficient).

taxpayer and 90 days have elapsed.[5] He contends that, prior to a final administrative determination of tax liability, the trier of fact can only speculate as to whether a defendant's conduct constitutes evasion of payment of a tax not yet due. Accordingly, Voorhies concludes that, under the statutory scheme here, the government should not be allowed to prosecute criminally for failure to pay a tax which it cannot yet collect civilly or administratively.

■ We reject the argument. A tax deficiency exists from the date a return is due to be filed; that deficiency arises by operation of law under sections 6151(a) and 6072(a). *See United States v. Northwestern Mutual Insurance Co.,* 315 F.2d 723, 725-26 (9th Cir. 1963) (under section 6151(a), a tax is due and owing on the date a return must be filed, even if ascertainment of the amount requires reference to a subsequent IRS redetermination; the statutory deficiency notice "merely reminds [the] taxpayer of [his] duty to pay a tax debt already due and does not create that liability"). *Cf. United States v. Gardner,* 611 F.2d 770, 775-76 (9th Cir. 1980) (amount of tax liability alleged by government in indictment was adjusted downward during course of trial). Here, Voorhies did not file timely personal returns for the 1970 and 1972 tax years; his taxes for those years were, however, due and owing on April 15, 1971, and April 15, 1973, respectively.

■ The record establishes that, although perhaps unclear as to the amount of Voorhies' evasion, the IRS was fully aware of the fact of that evasion. Voorhies traveled out of the country on three occasions in 1974, carrying with him over $80,000.00 in highly negotiable assets. In spite of his prior experience with customs reporting duties, he did not declare either that he took out of or returned to the United States with such large amounts of money. His previous encounter with customs agents, in late 1973, had disclosed Voorhies' deposits in Swiss banks and use of Swiss safety deposit boxes on an earlier occasion. At trial, Voorhies was unable to account for his use of the cash and gold coins on his return to Las Vegas, except to acknowledge that he did not place them in his Nevada bank account; not until February 1975 did Voorhies invest a correspondingly large amount of money in a Nevada business venture. The subsequent IRS determination of Voorhies' tax deficiencies for the two years in question totalled over $33,000.00. On these facts, the trier of fact could properly find a strong inference that Voorhies' activities during the indictment period were calculated to evade the payment of taxes due and owing.

■ Although not compelling it, decided cases support our conclusion. The filing of an administrative assessment record is not required before a criminal prosecution may be instituted under 26 U.S.C. §§ 7201-07 (1976) for failure to report or pay income tax. *United States v. Kelley,* 539 F.2d 1199, 1203 (9th Cir.), *cert. denied,* 429 U.S. 963, 97 S.Ct. 393, 50 L.Ed.2d 332 (1976) (dictum) (citing cases) (prosecution under 26 U.S.C. § 7205 for providing false information on withholding forms). The Seventh Circuit, while noting that proof of a "valid assessment" is requisite to finding a section 7201 violation for evasion of payment of taxes, has held that "there is no real distinction to be drawn between 'a tax due and owing' and a tax validly assessed." *United States v. England,* 347 F.2d 425, 430 & n.10 (7th Cir. 1965).[6] We agree. Although a prior valid assessment may be used to show a tax deficiency under section 7201, *see id.; Cohen v. United States,* 297 F.2d 760 (9th

---

5. 26 U.S.C. § 6213 (1976) provides for a 150-day period, rather than a 90-day period, if the statutory notice of deficiency is "addressed to a person outside the United States." Government trial counsel conceded that the 150-day period applied to Voorhies.

6. In *Cohen v. United States,* 297 F.2d 760, 771-72 (9th Cir.), *cert. denied,* 369 U.S. 865, 82 S.Ct.

1029, 8 L.Ed.2d 84 (1962), a Ninth Circuit panel noted that valid assessments (via 30- and 90-day statutory deficiency letters) had been made several years before the period covered by the indictment under section 7201. The panel did not, however, state that such an assessment was the only means by which "a tax due and owing" could be demonstrated.

Cir.), *cert. denied*, 369 U.S. 865, 82 S.Ct. 1029, 8 L.Ed.2d 84 (1962), it is not required to show that deficiency.

### III. OPINION TESTIMONY OF REVENUE AGENT

Voorhies contends that the only evidence of his personal tax liability, beyond the February 1975 assessment, was agent Nelson's testimony on his method of determining that liability. He contends that opinion testimony by one not qualified as an expert, absent the documents on which that testimony is based, is insufficient to establish tax liability on which a section 7201 conviction can be based.

█ A valid assessment is one method of establishing tax liability in the reported evasion of payment cases, *see, e. g., United States v. England*, 347 F.2d 425, 430 & n.10 (7th Cir. 1965), although the fact of a tax due and owing may also be established by documentary evidence of tax liability, accompanied by a summary by an expert, *see, e. g., United States v. Gardner*, 611 F.2d 770, 775 (9th Cir. 1980). The certificates of assessment against Voorhies for personal tax years 1970 and 1972 were introduced into evidence at trial. In the absence of an administrative- or judicial-level contention by the taxpayer that these assessments were invalid, the certificates of assessment were prima facie correct and therefore adequate evidence of the amount of Voorhies' tax liability.

### IV. INSUFFICIENCY OF THE EVIDENCE

Voorhies contends that the government's proof was insufficient to support a conviction for evasion of payment of taxes, because that proof established only "random transactions" in Switzerland during the indictment period.

█ Willfulness may be established in prosecutions under section 7201 by "any conduct, the likely effect of which would be to mislead or conceal." *Spies v. United States*, 317 U.S. 492, 499, 63 S.Ct. 364, 368, 87 L.Ed. 418 (1943).

No appellate tribunal has as yet been called upon to ascertain the peculiar meaning to be ascribed to willfulness in a felony prosecution for evasion of the payment. It would seem to require that the taxpayer cognizant of his financial obligations to the taxing authority has acted to conceal the means which he possesses or controls to discharge the obligation with the specific intent to defeat or evade the payment of monies due the government.

*United States v. Jannuzzio*, 184 F.Supp. 460, 469 (D.Del. 1960). Independent evidence of willfulness may be established by "the so-called 'badges of fraud'" and acts both prior and subsequent to the indictment period may be probative of the defendant's state of mind. *Id.* at 470. A mere failure to file a return and to pay the tax, however, is insufficient for a conviction under section 7201 for willful evasion of payment. *United States v. Mesheski*, 286 F.2d 345, 346–47 (7th Cir. 1961). The question of willfulness is uniquely suited for determination by the trier of fact. *United States v. House*, 524 F.2d 1035, 1045 (3d Cir. 1975). In considering the sufficiency of evidence challenge here, we view the evidence in the light most favorable to the government. *United States v. Andros*, 484 F.2d 531, 534 (9th Cir. 1973).

█ Independent of Voorhies' failure to file 1970 and 1972 personal returns and to pay the corresponding taxes due and owing, the evidence is sufficient to support his conviction for the willful attempt to evade the payment of those taxes. Voorhies liquidated his business assets in January 1974, exchanging the proceeds of the sale for smaller denomination cashier's checks, coins, and platinum, which were extremely portable; from February to August 1974, he traveled twice to Europe and once to the South Pacific, transporting assets valued at over $80,000.00 with him and negotiating the bulk of cashier's checks in Switzerland; these travels followed an IRS audit in 1973 during which Voorhies was put on notice of tentative tax deficiencies of over $33,000.00; although he reported exchanging $30,000.00 in United States currency for 100,000 Swiss francs during his 1974 travels, he used a false social security number on the report-

ing form; and customs forms filed by Voorhies in 1974 reported much smaller amounts of money being carried out of and into the United States than he admitted carrying, despite his constructive knowledge from 1973 of a duty to report instruments in excess of $5,000.00. Further, although no evidence was introduced tending to show that Voorhies made use of his Swiss bank accounts or safety deposit boxes during his 1974 travels, he was unable to account for the large assets which he claimed he had brought back into the country until at least five months after his return. Taken together, Voorhies' conduct in 1974 had the "likely effect" of misleading or concealing.

Affirmed.